**BROWNING–FERRIS INDUSTRIES, INC. and James Meszaros, Petitioners,**

v.

**Kenneth LIECK and Nydia Hinojosa Lieck, Respondents.**

**No. D–3616.**

Supreme Court of Texas.

Argued Oct. 13, 1993.

Decided June 2, 1994.

Rehearing Overruled Sept. 8, 1994.

Roger Townsend, Houston, William Powers, Jr., Austin, Lisa Powell, Charles C. Murray, McAllen, for petitioners.

Neil E. Norquest, McAllen, Norton A. Colvin, Jr., Brownsville, Gordon L. Briscoe, Harlingen, for respondents.

HECHT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and HIGHTOWER, CORNYN, GAMMAGE, ENOCH, and SPECTOR, Justices, join.

We address three questions in this malicious prosecution action: first, whether the trial court properly instructed the jury concerning the causal connection a plaintiff must prove between defendant's conduct and plaintiff's criminal prosecution to establish liability; second, whether a defendant can ever be liable for making statements to law enforcement officials which he did not actually know were false; and third, whether damages for loss of consortium can be awarded for harm to a spouse that involves no physical injury? For reasons that follow, we answer the first and third questions "no", and the second question "yes". The district court rendered judgment against defendants, which a sharply divided court of appeals, 845 S.W.2d 926, en banc, affirmed with some modifications. 845 S.W.2d at 950. We reverse and remand the case for further proceedings.

I

A detailed account of the evidence in this case has been made by the court of appeals in assessing the sufficiency of the evidence to support the judgment. As we have not been asked to review the method or standard used in that assessment, we need not recapitulate the entire record. We focus instead on the circumstances directly relevant to the legal issues raised here.

When James Meszaros, an employee of Browning–Ferris Industries, Inc., heard that the Texas Rangers were investigating the purchasing practices of the City of Brownsville, he became concerned that they might question his attempt to make a financial contribution to the reelection campaign of one of the members of the City Commission at a time when BFI was bidding on the City's garbage collection business. Meszaros asked another BFI employee and former Ranger, Dan North, to contact his friends among the Rangers and try to determine the scope of the investigation. North did so, and arranged for Meszaros to meet with two officials involved in the investigation.

At that meeting, Meszaros brought up the subject of the bidding on the City's garbage collection business. BFI had submitted its bid on its standard form contract, which was similar to the ones it, and its competitors, used with other Texas cities. Garbage Management Services also bid on the City's business. The terms of the bids were summarized by Brownsville's City Manager, Kenneth Lieck, distributed to members of the City Commission and to the press, and discussed at several City Commission meetings

which were open to the public. After the Commission voted to award the business to GMS, Lieck gave GMS' representative, Robert Torres, a slightly modified form of the contract BFI had submitted, and that proposed contract became the basis of the final negotiations between the City and GMS. Meszaros complained to the investigators that the contract Lieck had given Torres was confidential information. North showed the two investigators a statute from which they concluded, after reading it, that Lieck had violated the law.

At the request of various other law enforcement officials, Meszaros and an attorney for BFI provided additional statements and affidavits. Two City Commissioners also told officials that Lieck had given Torres confidential information. Meszaros, by his own admission at trial, never told officials that the terms of BFI's contract had been made public during the City Commission's consideration of the bids, even though he knew that was true, nor did he tell officials that he believed Lieck had not committed a crime, even though that was his belief. From these admissions it may thus be fairly said that Meszaros withheld from law enforcement officials information which they might well have considered important in deciding whether to prosecute Lieck.

An assistant district attorney reviewed the matter and presented it to the grand jury, which indicted Lieck for giving Torres confidential information, specifically, the contract BFI had submitted to the Brownsville City Commission. The indictment alleged a misdemeanor, although it did not state what statute had been violated. The indictment was dismissed about two months later because the grand jury had been improperly constituted. A second grand jury refused to indict Lieck, and the prosecution was then terminated.

Lieck and his wife Nydia sued BFI and Meszaros for malicious prosecution. The jury rendered a verdict favorable to the Liecks on all issues and found actual damages of $706,500 for Lieck [1] and $250,000 for

his wife for loss of consortium, and punitive damages against BFI of $1,500,000. The trial court rendered judgment awarding Lieck his actual damages against BFI and Meszaros, jointly and severally, and his punitive damages against BFI, but rendered judgment non obstante veredicto that Nydia Lieck take nothing. The court of appeals reversed in part, awarding Nydia the consortium damages found by the jury, then modified the punitive damages, apportioning them between Nydia and Kenneth, and otherwise affirmed the judgment. 845 S.W.2d 926.

## II

Before we turn to petitioners' complaints, it is necessary to recognize the important societal interests in tension in the tort of malicious criminal prosecution. A century ago this Court wrote:

> It is important that every citizen should be protected against malicious prosecutions, and it is equally important that crimes should be punished, in order that the law-abiding citizen may be secure in life, liberty, and property. To make the citizen liable to be mulcted in damages for an honest discharge of duty is to give immunity to crime, and to weaken the restraining power of the criminal law, thereby endangering the security of law-abiding people.

*Sebastian v. Cheney*, 86 Tex. 497, 25 S.W. 691, 694 (1894). The Restatement (Second) of Torts describes these competing interests similarly:

> The first is the interest of society in the efficient enforcement of the criminal law, which requires that private persons who aid in the enforcement of the law should be given an effective protection against the prejudice that is likely to arise from the termination of the prosecution in favor of the accused. The second is the interest that the individual citizen has in being protected against unjustifiable and oppressive litigation of criminal charges, which not only involve pecuniary loss but also distress and loss of reputation.

---

1. The jury found Lieck's damages to be $50,000 for past loss of earning capacity, $0 for future loss of earning capacity, $50,000 for past mental anguish, $100,000 for future mental anguish, $500,000 for injury to reputation, and $6,500 attorney fees to defend the criminal charges.

RESTATEMENT (SECOND) OF TORTS ch. 29, intro. note, at 405 (1977) [hereinafter "the RESTATEMENT"]. These interests are balanced by carefully defining the elements of an action for malicious prosecution, and the balance is maintained by strictly adhering to these elements.

It is frequently said that actions for malicious prosecution are not favored in the law. *E.g., Sullivan v. O'Brien,* 85 S.W.2d 1106, 1112 (Tex.Civ.App.—San Antonio 1935, writ ref'd); *Diamond Shamrock Corp. v. Ortiz,* 753 S.W.2d 238, 241 (Tex.App.—Corpus Christi 1988, writ denied); *Parker v. Dallas Hunting & Fishing Club,* 463 S.W.2d 496, 499 (Tex.Civ.App.—Dallas 1971, no writ); *Montgomery Ward & Co. v. Kirkland,* 225 S.W.2d 906, 909 (Tex.Civ.App.—San Antonio 1949, writ ref'd n.r.e.); *Deaton v. Montgomery Ward & Co.,* 159 S.W.2d 969, 972 (Tex. Civ.App.—Beaumont 1942, writ ref'd w.o.m.); *Reed v. Lindley,* 240 S.W. 348, 351 (Tex.Civ. App.—Ft. Worth 1922, no writ); 54 C.J.S. *Malicious Prosecution* § 4, at 524–25 (1987); 52 AM.JUR.2D *Malicious Prosecution* § 5, at 188 (1970). This aphorism is far too vague to serve as an analytical tool. As with any other cause of action, if the elements of malicious prosecution are proved, liability is established. What is distinctive about malicious prosecution is that there is little room for error in applying the law. Even a small departure from the exact prerequisites for liability may threaten the delicate balance between protecting against wrongful prosecution and encouraging reporting of criminal conduct. It is in this context that we consider the issues raised.

### III

#### A

Petitioners complain that the trial court erred in refusing to require the jury to find whether Meszaros' actions actually caused the indictment of Lieck. The trial court asked instead:

> Did James R. Meszaros, acting without probable cause and with malice, cause, *or aid or cooperate in causing,* a criminal prosecution to be commenced against Kenneth J. Lieck?

(Emphasis added.) The trial court did not define "cause, or aid or cooperate in causing" in the jury charge. Giving these words their plain meaning, the jury could have concluded that it was enough for Meszaros to have aided or cooperated with law enforcement officials in bringing about Lieck's prosecution. Petitioners argue that this does not satisfy the requirements for liability.

The court of appeals rejected petitioners' argument in a single sentence: "The courts of this State have repeatedly stated that the causation issue submitted in this case is the proper question for malicious prosecution cases." 845 S.W.2d at 943. The court cited four cases in support of this statement. In *Davis v. City of San Antonio,* 752 S.W.2d 518 (Tex.1988), this Court held that there was evidence to support a finding that defendant caused, aided or contributed to a criminal prosecution, but did not consider—because it was not questioned by the parties— whether such a finding was sufficient for liability. In *Bass v. Metzger,* 569 S.W.2d 917, 924 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.), and *Ellis v. Sinton Sav. Ass'n,* 455 S.W.2d 834, 836 (Tex.Civ.App.— Corpus Christi 1970, writ ref'd n.r.e.), the court listed the elements of a malicious prosecution action as including that defendant have caused, or aided or cooperated in causing, plaintiff's prosecution. Neither of these cases considered the causation element specifically; each merely listed the element among the other requirements to establish liability. *See also Yianitsas v. Mercantile Nat'l Bank,* 410 S.W.2d 848, 850 (Tex.Civ. App.—Dallas 1967, no writ). Finally, *Thomas v. Cisneros,* 596 S.W.2d 313, 316–17 (Tex. Civ.App.—Austin 1980, writ ref'd n.r.e.), also lists the same elements but later refers to a requirement that defendant's actions have proximately caused plaintiff's prosecution. Thus, none of the cases cited by the court of appeals, or by respondents, specifically considers the element of causation.

The statement of the element as "cause, or aid or cooperate in causing", appears to have originated in *Flowers v. Central Power & Light Co.,* 314 S.W.2d 373, 375 (Tex.Civ. App.—Waco 1958, writ ref'd n.r.e.). That case cites no authority for so broad an ele-

ment of causation. Prior decisions included among the required elements a stricter showing that defendant actually caused the prosecution. *See Davidson v. First State Bank,* 310 S.W.2d 678, 680 (Tex.Civ.App.—El Paso 1958, no writ); *Kirkland,* 225 S.W.2d at 907–08; *Meyer v. Viereck,* 286 S.W. 894, 897 (Tex.Civ.App.—Galveston 1926, writ dism'd w.o.j.); *Reed,* 240 S.W. at 351. Although as noted above several courts of appeals have recited the *Flowers* version of the elements of malicious prosecution, several others have referred to the pre-*Flowers* version of the causation element. *See McHenry v. Tom Thumb Page Drug Stores,* 696 S.W.2d 664, 665 (Tex.App.—Dallas 1985, writ dism'd); *Blanton v. Morgan,* 681 S.W.2d 876, 878 (Tex.App.—El Paso 1984, writ ref'd n.r.e.); *Fisher v. Beach,* 671 S.W.2d 63, 66 (Tex. App.—Dallas 1984, no writ); *Martin v. Trevino,* 578 S.W.2d 763, 766 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Lloyd v. Almeda State Bank,* 346 S.W.2d 947, 951 (Tex.Civ.App.—Waco 1961, writ ref'd n.r.e.).

The RESTATEMENT formulates the causation element as "initiates or procures". RESTATEMENT § 653.[2] A person initiates a criminal prosecution if he makes a formal charge to law enforcement authorities. *Id.* cmt. c. A person procures a criminal prosecution if his actions are enough to cause the prosecution, and but for his actions the prosecution would not have occurred. *Id.* cmts. d, f–h. In other words, procurement requires that a person's actions be both a necessary and a sufficient cause of the criminal prosecution. Thus, a person cannot procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another person, a law enforcement official or the grand jury. *Id.* An exception, which we discuss below, occurs when a person provides information which he knows is false to another to cause a criminal prosecution. *Id.* cmt. g.

The concept of procurement in the RESTATEMENT is essentially the same as the cause-in-fact element of proximate cause.

Cause in fact is ordinarily defined as "that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred". 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 2.04 (1987). A person procures a criminal prosecution if his actions in the course of things bring it about, and if, but for his actions, the prosecution would not have occurred. Just as there may be more than one proximate cause of an event, a single prosecution may be procured by more than one person. The RESTATEMENT idea of procurement does not, however, include the foreseeability component of proximate cause, which requires that "the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom." *Id.* Foreseeability is not an appropriate requirement for procurement. An ordinary person simply cannot be expected to foresee that his communication with law enforcement officials either will or will not lead to a criminal prosecution. There are too many participants in the process to foresee what the outcome of one person's role in the investigatory process is likely to be.

The RESTATEMENT rule does not subject a person to liability for merely aiding or cooperating in causing a criminal prosecution. We agree that liability should be thus restricted. Were it otherwise, persons only incidentally involved in a criminal investigation might find themselves facing allegations in a civil suit. The prospect of such liability poses too great a disincentive for people to cooperate freely with law enforcement officials. As many Texas courts have already recognized, a person's actions must be the cause in fact of a criminal prosecution before he can be liable for malicious prosecution. The trial court's instruction permitted the jury to find liability under a lesser standard and was therefore in error.

**2.** "A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused."

■ The RESTATEMENT concepts of initiation and procurement are better suited to malicious prosecution cases than the more general idea of causation. In such cases in the future, the jury should be asked, not whether the defendant "caused" criminal proceedings, but whether he either "initiated" or "procured" them, depending on the nature of the case. Initiation would not ordinarily need to be defined, as it would be demonstrated by evidence that defendant filed formal charges against plaintiff, but procurement should be defined as follows:

A person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred. A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false. A criminal prosecution may be procured by more than one person.

We discuss below the basis for the exception for providing false information.

**B**

Respondents argue that even if the trial court erred in failing to instruct the jury properly on the element of causation, that error was harmless, citing *Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n,* 710 S.W.2d 551 (Tex.1986). Petitioners urge us to overrule *Island Recreational* as having been wrongly decided. *See* 34 GUS. M. HODGES & T. RAY GUY, THE JURY CHARGE IN TEXAS CIVIL LITIGATION § 34, at 92–94 (Texas Practice 1988). *Island Recreational* considered whether the trial court's failure to instruct the jury on a party's theory was reversible error. In the present case, the trial court affirmatively charged the jury on the wrong standard of causation. We have not extended the holding of *Island Recreational, see Exxon Corp. v. Perez,* 842 S.W.2d 629 (Tex.1992) (per curiam), and we do not do so in this case. We need not consider here whether *Island Recreational* should be overruled.

The trial court rendered judgment against petitioners on a verdict which allowed the jury to find only that Meszaros aided or cooperated in causing Lieck's criminal prosecution. The trial court's failure to limit the jury to the proper standard of causation constitutes reversible error.

**IV**

Petitioners also argue that a person who cooperates with law enforcement authorities by providing them information should not be liable for malicious prosecution unless he knows the information to be false. Petitioners base their argument on the RESTATEMENT § 653, cmt. g, quoted in *Thomas,* 596 S.W.2d at 317, and policy considerations underlying actions for malicious prosecution and defamation.

Comment g describes the circumstances under which a person may be said to have procured a criminal prosecution by influencing a public prosecutor. The comment states:

A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in [§ 653] even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

If, however, the information is known by the giver to be false, an intelligent exercise

of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Plainly, comment g does not support petitioners' argument. The last sentence states that a person may be liable, not only when he gives information he knows is false to a prosecutor, but also when his conduct is the determining factor in the prosecutor's decision to prosecute. The comment states that a person who provides information which he believes is true but is in fact false is not liable *when* the prosecutor relies upon his own discretion in deciding whether to prosecute. If the prosecutor does not exercise his own discretion, however, the comment indicates that the provider of information has procured a criminal prosecution whether he knew the information to be false or not.

The comment states that an intelligent exercise of discretion is impossible when a prosecutor is provided false information. This is not literally true in all instances. Prosecutors may well suspect that information they receive is unreliable and decide not to initiate criminal proceedings. What is true is that a person who provides false information cannot complain if a prosecutor acts on it; he cannot be heard to contend that the prosecutor should have known better. Such a person has procured the resulting prosecution, regardless of the actions of the prosecutor, and the causation element for malicious prosecution is satisfied. This rule does not assist the Liecks. The jury found that Meszaros did not make full and fair disclosure to investigating officers. This is not the equivalent of a finding that Meszaros made statements he knew were false.

Petitioners have cited no authority from any other jurisdiction which supports their argument, and we are aware of none. They argue that a person would not be liable for defamation of a public official, like Lieck, without proof that statements made were known to be false, and that the same rule should apply in a malicious prosecution case. Otherwise, they argue, the imposition of civil liability will infringe upon constitutionally guaranteed freedom of speech. We are not persuaded. As we noted above, the conflicting policies underlying malicious prosecution actions must be carefully balanced. The requirements that a person make statements without probable cause and with malice, and the stringent requirement of procurement, are sufficient protection to those cooperating with law enforcement officials.

Accordingly, we conclude that the trial court did not err in refusing to instruct the jury that Meszaros could not be liable for malicious prosecution unless he knew the statements he made to investigators to be false.

## V

We turn finally to the question whether Nydia Lieck is entitled to damages for loss of consortium when Lieck suffered no physical injury. Although we have never held that damages for loss of spousal consortium cannot be recovered absent proof of physical injury, the only cases in which we have allowed such damages did involve physical injury. *See Reed Tool Co. v. Copelin,* 610 S.W.2d 736 (Tex.1980); *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978). Moreover, in *Reagan v. Vaughn,* 804 S.W.2d 463, 467 (Tex. 1990), we limited recovery of damages for loss of parental consortium to those cases where the parent has sustained "serious, permanent, and disabling" physical injuries. There is no reason to have one rule for parental relationships and another rule for spousal relationships. We are bound by *Reagan* to hold that damages for loss of spousal consortium are not recoverable absent proof of physical injury.

Furthermore, we believe that the conflicting policies underlying malicious prosecution actions require that recovery of damages be limited to the person prosecuted, and should not extend to members of his family. A person who provides information leading to

the prosecution of another should not face liability for damages other than to the person prosecuted.

Nydia cites decisions by four intermediate appellate courts in other states which have permitted recovery of consortium damages in malicious prosecution cases without proof of physical injury. *See Minion v. Gaylord's Int'l Corp.*, 541 So.2d 209 (La.Ct.App.1989); *Rivers v. Ex–Cell–O Corp.*, 100 Mich.App. 824, 300 N.W.2d 420 (1980); *Zalewski v. Gallagher*, 150 N.J.Super. 360, 375 A.2d 1195 (1977); *Dunn v. Alabama Oil & Gas Co.*, 42 Tenn.App. 108, 299 S.W.2d 25 (Tenn.Ct.App. 1956). She does not cite a case from any state's highest court, and we are aware of none. We decline to follow these authorities.

Accordingly, we hold that Nydia is not entitled to recover damages for loss of consortium.

\* \* \* \* \* \*

For the reasons explained, we reverse the judgment of the court of appeals, remand Kenneth Lieck's action against BFI and Meszaros to the trial court for further proceedings, and render judgment that Nydia Lieck take nothing.

DOGGETT, J., joins in Parts I–IV only, and notes his dissent to Part V.

GONZALEZ, J., not sitting.