TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00534-CV






Mary Jane Forbes, Appellant



v.



Eugene J. Lanzl, Appellee






FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT


NO. 94-513C, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING 






 This case arises out of a once amicable relationship among neighbors that turned
sour; ultimately criminal complaints were filed and Eugene Lanzl sued for conspiracy and
malicious prosecution. Based on the jury's findings, the court rendered judgment in appellee
Lanzl's favor. We will reverse the trial-court judgment and render judgment that Lanzl take
nothing.


Factual and Procedural Background



 Mary Elson (Elson) and Lloyd Elson were married at the time of these events. 
Mary Jane Forbes (Forbes) is Mary's sister. Tim Masters (Masters) is the brother of Elson and
Forbes. Gene Lanzl (Lanzl) was the Elson's neighbor and, for many years, their friend.

 On the day in question, Lloyd Elson visited Lanzl. They first talked about
repairing a bulldozer, then discussed Lloyd Elson's marital problems and his pending divorce. 
Lloyd Elson returned home, and was watering his trees. Forbes and Masters arrived. Forbes was
worried because she had gotten a recording that Elson's phone had been disconnected. Shortly
after Forbes and Masters arrived, Elson returned home. Forbes, Masters, and Elson were on the
porch while Lloyd Elson was behind the house, still watering.

 Lanzl and his daughter-in-law arrived. Elson asked Lanzl why he was interfering
in her divorce, why he had called Elson's office and Elson's attorney. Lanzl told her he had the
right to call anyone he wanted to. He sat down in a chair on the porch. Elson then told Lloyd
Elson, who was now watering in view of the porch, to leave. Lanzl did not think that Lloyd
Elson should leave. Lanzl stood up; he said that Elson then came over and hit him on the chest. 
Masters took Elson in the house. Then Forbes hit Lanzl and he defended himself by grabbing her
arm to ward off the blow. When asked how many times he was asked to leave by Elson or her
siblings, Lanzl said that he did not recall because it "got redundant." Lanzl finally left when
Lloyd Elson asked him to leave. At some point, Lloyd Elson quit watering and left as well. 
Lanzl went home, called the sheriff, then talked to the sheriff's deputy who was sent to
investigate. He overheard the conversation with the deputy while the others were still on the
porch and did not hear Forbes complain about her leg being hurt. Elson and her family went
inside with the deputy for several minutes, and Lanzl could not hear what transpired inside.

 According to Lanzl, he never asserted that it was within his civil rights to remain
on the porch; rather, he asserted he had a common-law right to remain. The basis he gave for
remaining was that he had to protect Lee Elson, the Elson's teenage daughter, because he believed
her mother was abusing her. Several times Lanzl had reported Elson's alleged abuse of Lee to
child welfare authorities. (1) He later picketed Elson's property, carrying a sign, "Teens Don't Need
Abuse." Lanzl was convicted for making repeated false reports. He was also charged with
stalking because of actions connected with his insistence that Elson was abusing her daughter. 
Although the trial court quashed the stalking indictment, this Court reversed and remanded for
further proceedings. It is unclear what happened on remand; Lanzl claims that the stalking case
was dismissed.

 According to Elson, she asked Lanzl to leave her porch numerous times. When
she "went over to take his arm" to ask him to leave again, he "jerked back and jumped up at
me." She was afraid he was going to hit her or Masters. He told her that he knew his civil rights
and could stay as long as he wanted. She went inside and called the sheriff. According to Elson,
she went to the county attorney to make a report about what happened because the sheriff's
department told her to. No one ever told her about the disposition of her complaint. In
connection with the ongoing disputes and before filing this malicious prosecution suit, Lanzl told
Elson he would take everything she had--the trailer, her property, and her daughter--and he would
torment her the rest of her life.

 According to Forbes, she thought Lanzl was going to hit Masters when Lanzl stood
up. She moved to try to get in between them to prevent a fight. That was when Lanzl grabbed
and twisted her arm and kicked her. She said her leg was bruised as a result of the encounter. 
She went to the county attorney because the sheriff's office told her to; "from the way I was
explained by law enforcement, the man had no right touching me, kicking me, or doing anything
to me." She said Lanzl sent her a letter demanding $10,000, which she ignored; (2) then she started
getting subpoenas. She had difficulty reading the complaint from the stand to verify that it was
the complaint she had signed alleging that Lanzl kicked her. She said that her husband generally
does her reading for her; when she is upset, she "can't read at all."

 According to Lanzl, he tried to file charges against Elson and Forbes but they
"refused my papers because they said I was not injured." He claimed that Elson and Forbes
decided that Forbes needed to claim that she suffered some injury in order to file charges against
him. He further claimed that Elson and Forbes only filed charges when they thought he was
going to file a complaint against them.

 Lanzl sued Elson and Forbes for conspiracy and malicious prosecution based on
the dismissal of their complaints against him. At the close of his evidence, Elson and Forbes
moved for directed verdicts. The court rendered a directed verdict in favor of Elson on both
complaints and in favor of Forbes on the conspiracy complaint, but allowed the malicious
prosecution complaint against Forbes to continue and be submitted to the jury. The jury awarded
Lanzl $6701 in actual damages, $10,000 in exemplary damages, and $3250 in pre-judgment
interest. After the verdict, Forbes moved for judgment notwithstanding the verdict, which the
court denied. On appeal, Forbes brings three issues challenging the admission of certain
evidence, the legal and factual sufficiency of the evidence to support the jury's findings, and the
legal and factual sufficiency of the evidence to support the damages awarded. We conclude that
the legal sufficiency challenge to the verdict is dispositive and do not reach the remaining points
of error. (3)


Malicious Prosecution



 To prevail on a malicious prosecution claim against Forbes, Lanzl had to establish
the following elements by a preponderance of the evidence:


(1) a criminal prosecution against plaintiff was commenced;


(2) the defendant caused (initiated or procured) the action;


(3) the prosecution terminated in the plaintiff's favor;


(4) the plaintiff was innocent;


(5) there was an absence of probable cause for the proceedings;


(6) defendant filed the charge with malice; and


(7) plaintiff was damaged by the criminal prosecution.



Richey v. Brookshire Grocery Co., 952 S.W.2d 515, 517 (Tex. 1997).

 Actions for malicious prosecution are not favored. See Browning-Ferris Indus.,
Inc. v. Lieck, 881 S.W.2d 288, 291 (Tex. 1994); Compton v. Calabria, 811 S.W.2d 945, 949
(Tex. App.--Dallas 1991, no writ). If the elements of the cause are proved, liability is established
as with any other cause of action; however, there is little room for error in applying the law. See
Browning-Ferris, 881 S.W.2d at 291. Even a small departure from the exact prerequisites for
liability may threaten the delicate balance between protecting against wrongful prosecution and
encouraging the reporting of criminal conduct. See id.

 There is an initial presumption in malicious prosecution actions that the defendant
acted reasonably and in good faith and had probable cause to initiate the underlying criminal
proceeding. See Richey, 952 S.W.2d at 517-18. The probable cause inquiry is narrow. It asks
only whether a reasonable person would believe that a crime had been committed given the facts
as the complainant honestly and reasonably believed them to be before the criminal proceedings
were initiated. See id. at 519. Even a failure to fully and fairly disclose all material information
or knowingly providing false information to the prosecutor will not defeat a complainant's
probable cause but are relevant to the issues of malice and causation in a malicious prosecution
claim. See id.


Probable Cause in a Malicious Prosecution Action


 Richey discusses the burden that a plaintiff in a malicious prosecution case must
carry to overcome the presumption that the defendant had probable cause. In short, the
defendant's duty when reporting a suspected crime to public officials is slight; the plaintiff's
burden to show lack of probable cause is heavy. Richey was a customer who entered a Brookshire
food store at approximately 2:30 a.m. The night manager, Farris, saw Richey place a pack of
cigarettes in his shopping cart. Farris then observed Richey "twiddle" the cigarettes in his hand
and put them in his coat pocket. See id. at 516. Richey checked out, paying for $51.75 worth
of groceries but not the cigarettes. Then Richey stopped by a bin in which customers could place
items to be donated to charity. He got a sack, filled it with baby food, paid $8.89, put the sack
in the bin and then left. See id. at 517.

 Farris confronted Richey in the parking lot and asked if he had forgotten to pay for
anything. When Richey said he had not, Farris then mentioned the cigarettes. Richey said he had
forgotten the cigarettes and offered to pay for them. Farris refused to accept payment and called
the police. Richey was interrogated, given a citation, and released. Farris later signed a sworn
statement charging Richey with theft of the cigarettes. See id. After the jury found Richey not
guilty of theft, Richey filed suit for false imprisonment and malicious prosecution. The jury found
in Richey's favor on the malicious prosecution claim. The court of appeals reversed and rendered
judgment in Brookshire's favor, holding that there was no evidence to support the jury's finding
that Brookshire lacked probable cause to prosecute Richey; the supreme court affirmed. (4)

 The supreme court in Richey considered the issue of Brookshire's probable cause
a question of law for the court. See id. at 518. The court noted that, inasmuch as Richey's
leaving the store with unpaid-for cigarettes was undisputed, the only issue left was Richey's state
of mind under Penal Code section 31.03. The court then said: "In a malicious prosecution case
based on a criminal complaint, the complainant's failure to make a further investigation into the
suspect's state of mind does not constitute lack of probable cause if all objective elements of a
crime reasonably appear to have been completed." See id. The court noted that a private citizen
has no duty to inquire of the suspect whether he has some alibi or explanation before filing
charges. See id. The court also said that a failure to fully and fairly disclose all relevant facts
to the prosecutor is relevant to the causation element in a malicious prosecution case, but does not
affect the probable cause element. See id. at 519. Similarly, providing false information to the
public official is relevant to the malice and causation element, not probable cause.

 There was a vigorous dissent in Richey. The dissent saw probable cause as a fact
issue, not a legal issue. See id. at 520. Although the facts that Richey left the store without
paying for the cigarettes in his pocket were undisputed, conflicting inferences could be drawn
according to the dissent. Resolution of conflicting inferences, including those arising from
undisputed facts, lies with the factfinder. See id. The dissent considered that the facts and
circumstances supported an inference that Richey did not intend to steal the cigarettes and thus
the jury's finding of no probable cause should have been upheld. (5)

 The crucial consideration in the case before us is whether Lanzl produced any
evidence to overcome the presumption that Forbes had probable cause to file her assault
complaint. As did the court in Richey, we analyze the elements of the offense involved. We
discuss the elements of self-defense as well as assault, because under the facts of this case, it is
important to clearly separate an analysis of probable cause from an analysis of guilt or innocence.


Elements of Assault and Self-Defense

 A person commits assault under the Penal Code if the person:


(1) intentionally, knowingly, or recklessly causes bodily injury to another,
including the person's spouse;


(2) intentionally or knowingly threatens another with imminent bodily injury,
including the person's spouse;


(3) intentionally or knowingly causes physical contact with another when the
person knows or should reasonably believe that the other will regard the contact
as offensive or provocative.



Tex. Penal Code Ann. § 22.01 (West 1994 & Supp. 1999) (Penal Code). (6) An assault under sub-section one is a class A misdemeanor while assault under subsections two or three is a class C
misdemeanor (with certain enhancements available). "Bodily injury" means "physical pain,
illness, or any impairment of physical condition." Id. § 1.07(a)(8). Bodily injury is a broad term
and encompasses even relatively minor physical contacts so long as they constitute more than mere
offensive touching. See Lane v. State, 763 S.W.2d 785, 786 (Tex. Crim. App. 1989) (police
officer testified that she suffered physical pain when her wrist was twisted by appellant as he
grabbed her wallet and twisted it out of her hands and her wrist was bruised; enough to constitute
"bodily injury").

 The definition of assault is the same, whether in a civil or criminal trial. See Wal-Mart Stores, Inc. v. Odem, 929 S.W.2d 513, 522 (Tex. App.--San Antonio 1996, writ denied). 
"[W]ith the exception of the rule of evidence which gives a person accused of a crime the benefit
of a reasonable doubt, the law of self-defense is the same in both civil and criminal cases." Foster
v. H. E. Butt Grocery Co., 548 S.W.2d 769, 771 (Tex. Civ. App.--San Antonio 1977, writ ref'd
n.r.e.). In Odem, 929 S.W.2d at 518, a store greeter thought that Odem left the store with unpaid
merchandise. The employee grabbed Odem by the arm, turned her around, and reached into her
purse to retrieve a readily visible blue package. Odem described the act as a "pull or touch of
either her elbow or hand." Id. The court said that Odem's testimony clearly disclosed a grabbing
of the arm which Odem considered offensive. "Moreover, if the jury accepted the testimony
showing that Saenz only grabbed Odem's purse while she was holding on to it, and not any
portion of Odem's body, the conduct would, nevertheless, constitute an assault under subsection
(3) of section 22.01." Id. at 522.

 Self-defense appears in the Penal Code chapter "Justification Excluding Criminal
Responsibility." See Penal Code §§ 9.01-9.63. With certain exceptions, a person is justified in
using force against another when and to the degree he reasonably believes the force is immediately
necessary to protect himself against the other's use or attempted use of unlawful force. See id.
at § 9.31(a). In discussing whether to instruct on self-defense, a court held, "Thus, if the
defendant was acting in self-defense, the assault would not be unlawful." Foster, 548 S.W.2d at
771.

 Lanzl claims that any contact he had with Elson or Forbes was made in self-defense. Ultimately, had there been a criminal trial, the court might have found Lanzl entitled
to an instruction on self-defense; however, the court might also have found that Lanzl provoked
the difficulty and was not entitled to the instruction. Similarly, had Forbes or Elson been tried
for assault, the court might have found Lanzl's provocation justified their actions as self-defense,
or might have found they assaulted him. However, we are not evaluating the result in a criminal
trial; our task is to evaluate whether Lanzl overcame the presumption that Forbes had probable
cause to bring a complaint.

 Although we view the evidence in the light most favorable to Lanzl, (7) the issue is
whether a reasonable person in Forbes's position would have believed that a crime had been
committed given the facts as she honestly and reasonably believed them to be before the criminal
proceedings were initiated. See Richey, 952 S.W.2d at 519. Viewing the evidence relevant to
that probable cause determination in the light most favorable to Lanzl, we hold that he has not
overcome the presumption that Forbes had probable cause to file her complaint.

 Lanzl refused to leave Elson's porch even though she repeatedly told him to leave. 
Lanzl does not dispute that Elson, Forbes and Masters all told him to leave. Instead, he claims
he asserted a common-law right to remain in defense of another. Lanzl was involved in a scuffle
with Elson. Taking as true Lanzl's version that Elson started the fracas by hitting him, from
Forbes's view, Elson may have been justified in using force against Lanzl because he refused to
leave her property. Lanzl was five foot eleven inches tall and weighed one hundred eighty
pounds. Forbes was five feet two and weighed one hundred ten to one hundred fifteen pounds. 
It was not unreasonable for Forbes to view Lanzl's continued presence and altercation with her
sister as a threat of harm. Lanzl does not dispute that he grabbed Forbes's arm. He disputed
twisting her arm, kicking her leg, or otherwise inflicting injury. We note that in opening
argument Lanzl's counsel conceded that Forbes was injured, just as Forbes's counsel conceded
that the injury was slight.

 Lanzl complains that Forbes exaggerated or falsified the degree of contact and
injury to make the sheriff accept charges against him, specifically by claiming he bruised her leg. 
However, it is undisputed that there was physical contact between Lanzl and Forbes and that
Forbes suffered bruising on her leg; photographs of her bruised leg were admitted in evidence. 
Whether Lanzl could later show he did not inflict this particular injury is relevant to establishing
his innocence of the charges but is not relevant to rebutting the presumption of Forbes's probable
cause to reasonably believe she was the victim of an assault. The degree of Forbes's injury is
relevant to the level of criminal prosecution involved but is not relevant to whether Forbes had
probable cause to file a complaint. See Zess v. Funke, 956 S.W.2d 92, 94 (Tex. App.--San
Antonio 1997, no writ) (value of allegedly stolen trailer goes to level of offense but not to
question of probable cause). Similarly, Lanzl contends that the physical contact on his part was
defensive; he was only preventing Forbes from hitting him. Again, whether his contact was
defensive only is relevant to his innocence but not to whether Forbes could reasonably have
believed she had been the victim of an assault.

 Lanzl argues he must refute only the charge of an assault by kicking and inflicting
a bruise, because that is the complaint signed by Forbes. Forbes went to the county attorney and
told him that Lanzl had grabbed, twisted, and hurt her arm as well as kicking and bruising her leg. 
Although she signed the document that the county attorney prepared, she testified that she had
minimal reading skills. The complaint was dismissed before it ever resulted in an information,
which could have had multiple counts based on all the facts Forbes related. Taking as true
Lanzl's statement that the county attorney's office "refused his charges" because he was not
injured, we can infer that the county attorney either failed to acknowledge subsections (b) and (c)
of section 22.01 of the Penal Code, or had some kind of policy against pursuing Class C assault
cases. Further, Lanzl's counsel conceded Forbes was injured. We cannot say that Forbes lacked
probable cause because the county attorney failed to recognize every form of assault under the
Penal Code based on the facts as Forbes related them. This would unduly burden any person
making such a complaint.


Application of Richey


 Malicious prosecution cases involve a delicate balance between encouraging the
reporting of crime and protecting individuals from wrongful prosecution. See Richey, 952 S.W.2d
at 517. Richey imposes a very limited duty in reporting suspected crime to a public official, at
least in the context of defending oneself against a malicious prosecution cause. The defendant can
even fail to fully disclose all facts and still not lack probable cause to report a complaint. See id.
at 519.

 If Richey could not overcome the presumption that Brookshire had probable cause
to believe he stole the cigarettes he placed in his pocket, it is nearly impossible after this physical
altercation for Lanzl to overcome the presumption that Forbes had probable cause to believe she
had been the victim of an assault. Richey involved a store manager with some training in dealing
with shoplifting. A number of factors could have led to the common-sense conclusion that Richey
did not intend to steal the cigarettes. Nevertheless, the court found probable cause for filing a
complaint based on Richey's admission that he left the store without paying for the cigarettes. 
We cannot impose a more onerous duty to evaluate probable cause on Forbes than the court
imposed on the store manager in Richey. Forbes reported the facts as she knew them: Lanzl
persisted in remaining on her sister's porch after being asked to leave, scuffled with her sister,
and grabbed her arm and hurt her. Her leg was bruised and she believed Lanzl did it. She
understood the sheriff's office to say she was supposed to file a complaint. In a malicious
prosecution case, she is presumed to have had probable cause to file her complaint.


Conclusion



 Accordingly, we conclude that Lanzl produced no evidence to overcome the
presumption that Forbes had probable cause to file her complaint. Because we find the legal
sufficiency issue dispositive, we need not discuss appellant's other issues. We sustain appellant's
issue challenging the legal sufficiency of the evidence, reverse the trial-court judgment, and render
judgment that Lanzl take nothing.



 


 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Reversed and Rendered

Filed: January 6, 2000

Publish
1. We recite the above in an attempt to understand why Lanzl did not simply leave the porch
and why Elson or Forbes might have considered his behavior irrational, as his abuse allegations
appear to have been unfounded. If Elson and Forbes knew that Lee Elson was not being abused,
Lanzl's insistence on remaining to defend Lee would seem irrational and perhaps frightening. 
Although it is clear that some events, such as the stalking charge, happened after the porch
confrontation, it is not clear when Lanzl began making the abuse allegations.
2. The clerk's record shows a seven-and-one-half-page letter from Lanzl dated January 11,
1994. He notifies Forbes of his intent to sue her and expresses his hope of "settling the problems
I have with you." He then instructs her on various aspects of the law of assault and self defense,
tells her she is committing perjury, tells her about the law of malicious prosecution, tells her the
duties of a host to an invitee and tells her about judgment day. This particular letter does not
name a specific settlement amount.
3. We decide rendition issues before remand issues. See Bradleys' Elec., Inc. v. Cigna Lloyds
Ins. Co., 995 S.W.2d 675, 677 (Tex. 1999); Tex. R. App. P. 43.3.
4. Brookshire Grocery Co. v. Richey, 899 S.W.2d 331, 337 (Tex. App.--Tyler 1995), aff'd,
952 S.W.2d 515, 516 (Tex. 1997).
5. Richey almost seems to hold that probable cause is a matter of law for the court to decide
rather than a matter of fact for the jury by viewing only the facts and not drawing inferences from
those facts; at least, not inferences favorable to the plaintiff in the malicious prosecution suit. The
court did not explicitly apply the "equally reasonable inferences are improper and non-probative"
version of the scintilla rule in evaluating the evidence in Richey. See Wal-Mart Stores, Inc. v.
Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998); Litton Indus. Prods., Inc. v. Gammage, 668 S.W.2d
319, 324 (Tex. 1984); see generally, William V. Dorsaneo, III, Adjustments to Evidentiary
Standards of Review, State Bar of Tex. Prof. Dev. Program, Advanced Civil Appellate Course,
P-2 (1999).
6. If we were dealing with a criminal case, the applicable version of the Penal Code would be
the version in effect August 23, 1993, as the effective date of the current Penal Code was January
1, 1994. See Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex. Gen. Laws 3586, 3705. 
However, the definition of the offense was the same, so we cite the current code for convenience.
7. In deciding a no-evidence point, we must consider only the evidence and inferences tending
to support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965).



e court
imposed on the store manager in Richey. Forbes reported the facts as she knew them: Lanzl
persisted in remaining on her sister's porch after being asked to leave, scuffled with her sister,
and grabbed her arm and hurt her. Her leg was bruised and she believed Lanzl did it. She
understood the sheriff's office to say she was supposed to file a complaint. In a malicious
prosecution case, she is presumed to have had probable cause to file her complaint.


Conclusion



 Accordingly, we conclude that Lanzl produced no evidence to overcome the
presumption that Forbes had probable cause to file her complaint. Because we find the legal
sufficiency issue dispositive, we need not discuss appellant's other issues. We sustain appellant's
issue challenging the legal sufficiency of the evidence, reverse the trial-court judgment, and render
judgment that Lanzl take nothing.



 


 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Reversed and Rendered

Filed: January 6, 2000

Publish
1. We recite the above in an attempt to understand why Lanzl did not simply leave the porch
and why Elson or Forbes might have considered his behavior irrational, as his abuse allegations
appear to have been unfounded. If Elson and Forbes knew that Lee Elson was not being abused,
Lanzl's insistence on remaining to defend Lee would seem irrational and perhaps frightening. 
Although it is clear that some events, such as the stalking charge, happened after the porch
confrontation, it is not clear when Lanzl began making the abuse allegations.
2. The clerk's record shows a seven-and-one-half-page letter from Lanzl dated January 11,
1994. He notifies Forbes of his intent to sue her and expresses his hope of "settling the problems
I have with you." He then instructs her on various aspects of the law of