

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00220-CV

---

Vanessa Velez Labrado, Appellant

v.

Leith Labrado and Laboe Labrado, Appellees

---

On Appeal from the 243rd District Court
El Paso County, Texas
Trial Court No. 2021DCV3955

---

## CONCURRING AND DISSENTING MEMORANDUM OPINION

I agree with the majority opinion's assessment of Laboe's and Leith's abuse-of-process claims, i.e., that there was no evidence Vanessa made improper use of any temporary order in the divorce case *after* its issuance. But I write separately for three reasons relating to Leith's and Laboe's malicious prosecution claims: (1) because the jury charge's definition of the judicial-proceedings privilege was not challenged, the legal sufficiency of evidence supporting this privilege must be assessed based on the charge's definition, not the correct definition under the law; (2) I disagree that legally insufficient evidence supports Laboe's malicious prosecution claim;

and (3) I agree that legally insufficient evidence supports Leith's malicious prosecution claim, but I reach that conclusion based on insufficient evidence of a special injury.

## A. The judicial-proceedings privilege

When a jury charge definition is not challenged, we measure sufficiency of the evidence under the charge's definition, even if it is not the correct definition under the law. *See Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 426 n.32 (Tex. 2022) ("[I]t is the court's charge . . . that measures the sufficiency of the evidence when the opposing party fails to object to the charge.") (citing *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (collecting authorities)); *cf. Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 407–08 (Tex. 2016) ("When a party properly preserves error by objecting to an erroneous definition . . ., we measure the legal sufficiency of the evidence against the definition that should have been used in the charge."). Here, the charge defined the judicial-proceedings privilege—i.e., "absolute immunity"—as applying solely to trial testimony:

> When a defendant testifies at trial, no civil liability for malicious prosecution may arise from that testimony. Here, the defendant has claimed that she is immune from civil liability based on her testimony in the underlying divorce proceedings, resulting in a restraining order and subsequent protective order.

Vanessa neither objected to this definition at the trial court level, nor does she argue on appeal that it is incorrect. Further, while Vanessa does argue that a separate question should have been submitted on the judicial-proceedings privilege since it provides an affirmative defense, she neither proffered such a question nor otherwise brought this issue to the trial court's attention, thereby waiving the issue. *See Wackenhut Corp. v. Gutierrez*, 453 S.W.3d 917, 919–20 (Tex. 2015) ("[T]here should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling.") (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235,

241 (Tex. 1992)).[1] Thus, in accordance with the charge, when assessing the sufficiency of the evidence, I would limit application of the judicial-proceedings privilege to trial testimony in the underlying divorce proceedings as the jury was instructed to do.

Rather than using the charge's definition of the judicial-proceedings privilege, the majority opinion looks to caselaw, which defines the judicial-proceedings privilege more broadly, extending it to "proceedings before executive officers, and boards and commissions which exercise quasi-judicial powers," per *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942), which the opinion concludes encompasses CPS and Daycare Licensing investigations. Caselaw further defines the privilege to broadly cover "any statement made by . . . parties or witnesses," and to attach to "all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits[,] and any of the pleadings or other papers in the case." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 46 (Tex. 2021). Based on the caselaw, the majority opinion concludes that the judicial-proceedings privilege "bars Appellees' malicious prosecution

---

[1] Vanessa also argues that a separate question should have been submitted on good-faith immunity under Texas Family Code § 261.106, which provides an affirmative defense precluding civil liability for reporting child abuse or participating in a child-abuse investigation. *See* Tex. Fam. Code Ann. § 261.106(a) ("A person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect is immune from civil . . . liability that might otherwise be incurred or imposed."); *Graves v. Evangelista-Ysasaga*, No. 14-22-00137-CV, 2023 WL 370589, at *6 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, pet. denied) (holding that § 261.106 immunity is an affirmative defense). Vanessa did proffer such a question below, which the trial court rejected. However, malice on the defendant's part is a required element in a malicious prosecution claim, while absence of malice on the defendant's part is required for immunity to apply under § 261.106. *See Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) ("To prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must establish . . . malice in the commencement of the [underlying] proceeding[.]"); Tex. Fam. Code Ann. § 261.106(c) ("A person . . . who acts . . . with malicious purpose in reporting alleged child abuse or neglect is not immune from civil or criminal liability."). As a result, § 261.106 immunity will generally play no role in a malicious prosecution case based on participation in a CPS or Daycare Licensing investigation. That is, if the factfinder concludes—as the jury did here—that the malice element of the malicious prosecution claim has been met, § 261.106 immunity is unavailable, and if the factfinder concludes that the malice element has not been met, § 261.106 immunity is unnecessary. Vanessa does not challenge the jury's finding that she acted with malice, thus she is not entitled to immunity under § 261.106. Moreover, Vanessa does not seek relief in the form of a new trial, *see* Tex. R. App. P. 38.1(j) (appellant's brief must "clearly state[] the nature of the relief sought"), which would be the only relief available for harmful jury charge error. *See Glenn v. Leal*, 596 S.W.3d 769, 772 (Tex. 2020) ("When a trial court gives an erroneous charge that instructs the jury on the incorrect law applicable in the case, we have held that a new trial is the appropriate remedy."). The majority opinion does not address § 261.106 immunity.

3

. . . claims based on the statements Vanessa made during the CPS investigations." But because statements Vanessa made during the CPS and Daycare Licensing investigations do not constitute trial testimony, I would conclude that such statements are not protected by the judicial-proceedings privilege under the controlling charge definition in this particular case.

## B. Laboe's malicious prosecution claim

In regard to Laboe's malicious prosecution claim, Vanessa challenges the legal sufficiency of the evidence presented in support of elements one, two, and six: "(1) the institution or continuation of civil proceedings against the plaintiff; (2) by or at the insistence of the defendant; . . . and (6) special damages." *See Texas Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (stating elements of malicious prosecution claim). She also challenges the legal sufficiency of evidence supporting mental anguish damages.

### (1) Institution or continuation of civil proceedings by or at the insistence of Vanessa

As to elements one and two, I cannot agree with the majority opinion's conclusion that although Laboe testified that "HHS [Daycare Licensing] initiated an investigation into him . . . based on a 'claim' made by Vanessa," he "did not elaborate on the 'claim'"; thus, this evidence is "so weak as to do no more than create a mere surmise or suspicion of its existence, . . . is no more than a scintilla and, in legal effect, is no evidence."

Laboe testified as follows:

Q. Okay. Was there an investigation that was instituted by [Vanessa] against you with the people who license daycares?
A. Yes.

. . .

Q. Was there an investigation that was made against you and/or Three R's Schools with the licensing for daycares because of a claim made by [Vanessa]?
A. There was two of them. Yes, ma'am.

The issue here is simply whether Vanessa initiated an investigation against Laboe, not

4

whether her complaint against him contained any specific content.[2] *See Texas Beef*, 921 S.W.2d at 207. But even if I were to agree that Laboe's testimony was legally insufficient, the record contains additional relevant evidence. As explained above, the judicial-immunity privilege does not extend to statements made by Vanessa in the CPS and Daycare Licensing investigations. As the majority opinion acknowledges, Luis Ceballos, the Daycare Licensing investigator, testified that Vanessa told him, among other things, that "on the night of April 5th, 2020, [her child, L.L.] was found in the restroom crying and claiming that his butt was hurting (itchy) because of his father, Leith, and uncle Laboe," and "both [Leith] and Laboe stuck their finger in his butt while being cared for by [Leith] at Three R's Daycare," and that "[L.L.] mentioned that Laboe touched his penis." I would conclude that these statements constitute legally sufficient evidence to support the jury's finding that Vanessa "initiated or continued administrative proceedings with . . . Daycare Licensing[.]"

**(2) Special damages**

As to the "special injury" or "special damages" element of a malicious prosecution claim, evidence of an "arrest, attachment, injunction, or sequestration" is required. *See id.* at 208–09 ("A plaintiff must suffer a special injury before recovering for malicious prosecution of a civil case. It is insufficient that a party has suffered the ordinary losses incident to defending a civil suit, such as inconvenience, embarrassment, discovery costs, and attorney's fees. . . . There must be some physical interference with a party's person or property in the form of an arrest, attachment, injunction, or sequestration."). Here, Vanessa argues there is no evidence that Laboe suffered such

---

[2] In addition to arguing there is no evidence that she initiated a relevant prior proceeding, Vanessa also argues there is no evidence that she continued such a proceeding. *See Texas Beef*, 921 S.W.2d at 207 (malicious prosecution claim may be based on either initiation or continuation of prior proceeding). The majority opinion concludes that "because the CPS and HHS investigations continued based on outcries made to other individuals, . . . there is no evidence that civil proceedings were continued *only* at Vanessa's insistence.") (emphasis added). However, the law does not require the prior proceeding to have been continued solely at the defendant's insistence. *See Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292 (Tex. 1994) ("Just as there may be more than one proximate cause of an event, a single prosecution may be procured by more than one person.") (discussing malicious criminal prosecution); *Gilbreath v. Horan*, 682 S.W.3d 454, 491–92 (Tex. App.—Houston [1st Dist.] 2023, pet. denied) (discussing conspiracy to engage in malicious prosecution).

an injury, as the temporary orders restricting him from seeing Leith's children arose out of Leith's divorce case, not the Child Protective Services and Daycare Licensing investigations made the basis of Laboe's malicious prosecution claim. However, Laboe testified he was kept away from his daycare business for almost six months as a result of the Daycare Licensing investigation. Vanessa does not address this evidence, which I would conclude is legally sufficient to meet the special-injury requirement.

### (3) Mental anguish damages

I would also conclude that Laboe presented legally sufficient evidence to support the jury's $25,000 mental anguish damages award. Vanessa argues that there was no evidence of the "nature, duration, or severity" of Laboe's mental anguish symptoms, and that his own testimony "fail[ed] to rise to the level of purported anguish to establish the existence of a substantial disruption in [his] daily routine because of that mental anguish," nor was there "any other evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." But, as Vanessa herself notes, Laboe testified that:

- The Daycare Licensing investigation made him "[v]ery embarrassed, very upset, very frustrated, and very[,] very sad."
- "It's a horrible feeling to have to talk with these accusations to people that you work with on a professional level"; "[T]his is the worst of the worst that can happen in daycare."
- The allegations against "his children" made him feel "[h]orrible, embarrassed, and just sad."
- Telling his parents about the allegations made him feel "[h]umiliated, mad, extremely sad. It was one of the most horrible experiences I had to tell [] my parents."
- He experienced problems with "[l]oss of sleep, weight loss, extreme duress, constant fear[.]"
- He got physically ill.
- His professional reputation was harmed.
- His greatest fear is that "[Vanessa] does not stop harassing, making these false

6

allegations, continuing hurting the business, continually harming the relationship I had with [D.D. and N.D.] . . . . It just doesn't stop. This has happened for four years. It has not stopped."

Further, as noted above, Laboe testified that he was kept away from his daycare business for almost six months as a result of the Daycare Licensing investigation. I would conclude that together, this evidence is legally sufficient to establish the existence of mental anguish. *See Anderson v. Durant*, 550 S.W.3d 605, 620 (Tex. 2018) (holding that the following testimony was sufficient to establish the existence of mental anguish: "The accusations . . . affected me. They basically destroyed me . . . . [S]ince these accusations have come about, I'm paranoid about going outside. Have trouble focusing. Anxiety, anxious. It's been a two-year nightmare trying to get my life back and my reputation back[.]"; "I had trouble sleeping. I had trouble eating. I had trouble focusing on things. I worried about my family's future. Worried about my 30–year career that had been slandered all over town.").

Vanessa further argues that "there was no evidence to support the amount of damages[.]" I would conclude that the evidence described above is legally sufficient in this regard as well. *See Gregory v. Chohan*, 670 S.W.3d 546, 560 (Tex. 2023) ("[T]he same kind of evidence [relevant to the *existence* of mental anguish damages]—of [their] "nature, duration, and severity"—will naturally also be relevant to the *amount* awarded.") (emphasis in original); *id*. at 557 (noting that prior decisions "acknowledge the inherent indeterminacy of noneconomic awards and the discretion that must be afforded to juries asked to assign a dollar value to emotional injury").

Thus, because the legal sufficiency challenges to Laboe's malicious prosecution claim— that there was no evidence Vanessa initiated or continued a prior civil proceeding and no evidence Laboe suffered a special injury or mental anguish damages—lack merit, I would conclude the trial court's judgment should be affirmed as to this claim.

### C. Leith's malicious prosecution claim

Finally, in regard to Leith's malicious prosecution claim, I agree with the majority opinion's conclusion that the jury's verdict in his favor cannot stand, but for a different reason. Vanessa challenged the legal sufficiency of the evidence supporting the special-injury element. As she notes, the only "special injuries" Leith contends he suffered are being restrained from seeing his children and kept away from his home. However, it is undisputed that the temporary orders imposing these restrictions arose out of Leith's divorce case, not the Child Protective Services and Daycare Licensing investigations made the basis of his malicious prosecution claim. Absent a special injury arising from these investigations, Leith cannot recover for malicious prosecution based on them. *See Sharif-Munir-Davidson Dev. Corp. v. Bell*, 788 S.W.2d 427, 430 (Tex. App.—Dallas 1990, writ denied) ("The rule in Texas denies an award of damages for the prosecution of civil suits, with malice and without probable cause, unless the party sued suffers some interference, by reason of the suits, with his person or property.") (citing *Pye v. Cardwell*, 222 S.W. 153, 153 (Tex. 1920)). Accordingly, I agree with the majority opinion's conclusion that the trial court's judgment should be reversed as to Leith's malicious prosecution claim.

### D. Conclusion

For the reasons stated above, I join in the majority opinion's disposition of Laboe's and Leith's abuse-of-process claims, dissent from its conclusion that Laboe is not entitled to prevail on his malicious prosecution claim, and concur in its conclusion that Leith is not entitled to prevail on his malicious prosecution claim.

LISA J. SOTO, Justice

October 31, 2025

Before Salas Mendoza, C.J., Palafox and Soto, JJ.
Soto, J., concurring and dissenting