# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00169-CV

Evans P. Weaver, Appellant

v.

Nicole Bell, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT
NO. GN-304677, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Because Bell moved for summary judgment on the issue of malicious prosecution under Rule 166a(c) of the Texas Rules of Civil Procedure, but failed to demonstrate her entitlement to judgment as a matter of law, and because genuine issues of material fact exist, I dissent. Even from the majority's lengthy recitation of facts, it is clear this case is rife with disputed issues of fact.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 21, 2001, Bell entered into a construction contract with Weaver for a remodeling project on her property. The initial project included repairs and construction work on the interior and exterior of the house. Bell gave Weaver a key to her house for access when she was not there. The relationship between Weaver and Bell deteriorated rapidly.

In the first week of September, Weaver's employees began preparing an area for a driveway in front of Bell's residence. Because neighbors complained to the City of Austin that the construction endangered an old tree on the property, a City inspector halted construction until necessary permits could be obtained. Shortly thereafter, Weaver and Bell had a disagreement about the payment schedule, and both engaged lawyers. On October 3, they amended the contract to require Bell to make a partial payment for some of the work and to require Weaver to complete the work and release the lien by October 15. A dispute again erupted, and Bell sued Weaver and his company, Weaver Interests, on October 10 for fraud and breach of contract. Weaver then filed a counterclaim against Bell, and Bell hired another company, ECO Systems, to complete the work on her property.

On December 7, Weaver and two employees returned to the property. Weaver claims he returned to comply with a demand from Bell's lawyer that he apply protective black paint to exposed cuts on trees he had trimmed. When Weaver arrived at the property, he discovered that five or six men, who apparently worked for ECO Systems, appeared to be cutting on the roots of the old tree, which was in violation of the permit that had been obtained.

Weaver began photographing the work site and then called the City of Austin Environmental Department to report the apparent violation of the permit. A city employee, Michael Embesi, arrived at the property to inspect for damage to the tree and for compliance with the permit. After walking around the property with Embesi to inspect possible damage, Weaver left the property, leaving Embesi behind. Embesi issued a stop-work citation for the property.

A foreman for ECO Systems, Eladio Mendoza, advised the owner of ECO Systems, Chris Mele, that Weaver and two employees had returned to the property and that one of the men had entered Bell's house. In turn, Mele gave this information to Bell, and she contacted the Austin Police Department to report Weaver's alleged criminal trespass. She also reported that Mendoza told her that Weaver had gone inside her house. In an affidavit given to the police and executed on December 19, 2001, Bell averred that Weaver had only been hired for work outside the residence and had no reason or permission to enter the house. She further averred

> Mr. Weaver had no right to come onto my property. He had no prior permission and was instructed not to come near, or contact me. Not only did Mr. Weaver maliciously interfere with current construction of my driveway, but he invaded my privacy and sense of safety. Mr. Weaver has no reason to enter my home, so I am very concerned about his motivation. I personally fear for my safety, and the intent that Mr. Weaver may have. He has vowed to make my life "Very Difficult" and I fear that this is only the beginning.

On January 3, 2002, an arrest warrant for Weaver was issued. He turned himself in, was booked, and was released on bail. Thereafter, Bell sent an undated letter to Assistant County Attorney Gilbert Barrera advising him that she had no desire to prosecute Weaver. The county attorney then dismissed the case against Weaver.

Weaver sued Bell, ECO Systems, Mendoza, the police detective, the City of Austin, and others, alleging facts and stating causes of action for constitutional violations, false imprisonment, defamation, and malicious prosecution. A month later, Weaver amended his petition, alleging causes of action against various defendants for false arrest, false imprisonment, defamation, and malicious prosecution. Bell answered by general denial, without asserting any affirmative

3

defenses, on July 21, 2003. Three weeks after answering, Bell filed a summary judgment motion addressing only the cause of action for malicious prosecution. Challenging the elements of the cause of action, she asserted five grounds for summary judgment: (i) that Weaver failed to establish the element of probable cause; (ii) that Bell did not cause the commencement of criminal proceedings; (iii) that Weaver failed to establish that Bell acted with malice; (iv) that the criminal proceeding against Weaver did not terminate in his favor; and (v) that Weaver failed to establish his innocence.

## ANALYSIS

In his sole issue on appeal, Weaver challenges the summary judgment rendered in favor of Bell. Weaver contends that Bell failed to demonstrate her entitlement to summary judgment as a matter of law, and that the summary judgment evidence raises questions of fact concerning Bell's intent in lodging and pursuing criminal charges against him.

### Standard of Review

We review summary judgments *de novo*. *Shell Oil v. Khan*, 138 S.W.3d 288, 291 n.4 (Tex. 2004). Parties moving for summary judgment assume the burden of showing as a matter of law that the plaintiff has no cause of action against them. *Id*. The sole question is whether the summary judgment proof conclusively establishes as a matter of law that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action and that the movant is entitled to judgment as a matter of law on the issues expressly presented to the trial court. *Texas Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002); *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222-23 (Tex. 1999); *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex.

4

1999); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). After the defendant produces evidence entitling it to summary judgment, the burden shifts to the plaintiff to present evidence creating a fact issue. *Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

To prevail on a claim of malicious prosecution, the plaintiff has the burden to prove at trial that the defendant, acting with malice and without probable cause, initiated or continued prosecution, which terminated in the plaintiff's favor and resulted in damages. *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 517 (Tex. 1997). Still, at the summary judgment stage, the defendant, as movant, assumes the burden of negating at least one element of each of the plaintiff's theories of recovery, or must plead and conclusively establish each element of an affirmative defense. *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We do not shift the burden of proof to the non-movant unless and until the movant has established his entitlement to a summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). And, in our review, we must accept all that Weaver alleged as true. *Grizzle,* 96 S.W.3d at 252.

Here, Bell seeks to demonstrate that she is entitled to summary judgment by negating an element of Weaver's malicious prosecution claim. She attaches evidence to her motion and asserts that there are no genuine issues of material fact. Although a defendant can move for summary judgment on the plaintiff's cause of action under Rule 166a(c)—that is, by proving with summary judgment evidence that the plaintiff has no cause of action—a defendant can accomplish the same objective under Rule 166a(i) without the necessity of providing proof. Thus, ordinarily a defendant uses the "no-evidence" motion when it asserts, as Bell does here, that the plaintiff has "failed to establish" certain elements of his cause of action. But Bell iterates in her brief on appeal

5

that "it is clear that Bell's motion was a traditional motion for summary judgment" and she cites to Rule 166a(c).[1]

A motion for summary judgment must itself expressly present the grounds upon which it is made, and it must stand or fall on these grounds alone. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993); *see* Tex. R. Civ. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."). A defendant moving for a traditional summary judgment assumes the burden of showing as a matter of law the plaintiff has no cause of action against him. *Levesque v. Wilkens*, 57 S.W.3d 499, 503 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Thus, Bell retains the burden of demonstrating that she is entitled to summary judgment and, to carry her burden, she must conclusively negate at least one element of Weaver's cause of action. *See American Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997); *Science Spectrum, Inc.*, 941 S.W.2d at 911.

**The Summary Judgment Motion**

The summary judgment record includes an affidavit, a deposition transcript, the first original amended petition, and three other documents. Bell attached her August 12, 2003 affidavit to her motion for summary judgment. In the affidavit, she attests to the following facts:

---

[1] This case is unlike the cases in which a defendant moves for summary judgment under subsection (a) or (b) as well as subsection (i) and attaches evidence. It is now clear that a party may proceed under either theory and that a "no evidence" motion will not be disregarded because the party attaches evidence. *Binur v. Jacobo*, 135 S.W.3d 646, 650-51 (Tex. 2004). Here, the motion clearly set forth that it was presented solely under subsection (a). Because we may consider only grounds expressly raised by the motion, we may not convert the motion into a "no evidence" motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

6

The Amendment [to the contract] did not require the Plaintiff to enter my home, but it required the work to be completed by October 15, 2001. Plaintiff refused to honor the agreement and to complete the work as contemplated in the Amendment. As a result, Defendant was forced to file suit against the Plaintiff to remove the lien he filed. I then hired ECO Systems to complete the work.

* * *

On December 7, 2001, employees of ECO Systems were working at my residence. The Plaintiff states in his First Amended Original Petition that he arrived at my residence on that day and began taking pictures. . . . One of the workers, Eladio Mendoza, became concerned by the Plaintiff's actions and called his employer, Chris Mele. . . . Mr. Mele then called me and informed me that Mr. Mendoza had seen the Plaintiff in my yard yelling, screaming and taking pictures. I then spoke with Mr. Mendoza who confirmed this information, and he then told me that he had seen the Plaintiff enter my home.

Bell avers that she then contacted her attorney, who advised her to report the incident to the police.

Bell provided a probable-cause affidavit to the police on December 19, 2001; a police officer also interviewed Mendoza. Bell's August 12 affidavit also addressed the filing of criminal charges:

I did not want to press charges against the Plaintiff, and I informed the prosecuting attorney of this by letter [which is attached to the affidavit]. The prosecutor dropped the charges against the Plaintiff through a Motion to Dismiss.

To this affidavit, Bell attached six exhibits: (i) the contract amendment; (ii) the deposition of ECO Systems foreman, Eladio Mendoza; (iii) Bell's December 19 probable-cause affidavit; (iv) Bell's undated and unsigned letter to the prosecutor; (v) the prosecutor's motion to dismiss the charge against Weaver, dated June 18, 2002; and (vi) plaintiff's first amended original petition.

The original contract is not attached as an exhibit. The one-page contract amendment, dated October 3, 2001, described a payment schedule and specified tasks for Weaver to complete by October 15, including a circular driveway, a sprinkler system and landscaping, a garage and

7

garage opener, a door and window for the garage, power washing of the house, and installation of tree lights.

Among the exhibits attached to Bell's affidavit is the entire deposition of Eladio Mendoza, the ECO foreman, who testified through a translator. Although Bell's motion fails to point to specific portions of the deposition, a review of the transcript nevertheless discloses the following testimony: Mendoza was working at the house when "a man" came and took lots of pictures of him; although someone may have told him it was the man who had previously worked on the premises, he was not sure who the man was, but could "possibly" recognize him; the door to the house was ajar and the man walked "inside and then came back out"; and the man complained about Mendoza cutting the roots of the big tree. In response to further questions about the duration of the entry, Mendoza testified: "He just walked in and walked out. . . . Just as long as it takes to walk inside and outside. He didn't find anybody."

In her probable-cause affidavit, Bell avers that she told Tony Rangel, Weaver's employee, that he and Weaver were not allowed to come onto the property because of the lawsuit, and "[m]y attorney notified them as well." She then relates that Mendoza told her that Weaver "trespass[ed]" in her yard and her home, entering the home through the front door and staying inside for two or three minutes. When Bell arrived at home, Weaver and the city inspector, who had also been on the premises, were gone. She further averred:

> Tony Rangel and another employee were still on my property working in a tree. I asked them to leave and told Tony that he and Mr. Weaver had trespassed and could not come back on the property. Tony apologized and said that he was aware of that, but that he was only following Mr. Weaver's instructions.

8

Mr. Weaver had no right to come onto my property. He had no prior permission and was instructed not to come near, or contact me. . . . Mr. Weaver has no reason to enter my home. . . .

Also attached as an exhibit to Bell's affidavit was the undated and unsigned letter to the Travis County Attorney's Office "in response to your office's recent requests regarding the results I want out of this criminal matter" stating:

> I do not have and never had, any desire or intention to punish Mr. Weaver for his alleged acts. For personal safety reasons, I merely reported to the Austin Police Department information that I received from persons who told me they witnessed Mr. Weaver going into my home. I was not present at the time and I do not have any first hand knowledge of what happened. Pursuant to the investigating detective's request, I arranged a meeting between him and the witness. I did not ask that charges be filed against Mr. Weaver—I only reported what was told to me. The decision to file charges and prosecute Mr. Weaver was solely the decision of the Police department and your office.
>
> Therefore, I have no interest in the results of the criminal prosecution. If you want to proceed with the prosecution, that is your decision. If it were up to me, I would drop the charges.

A notation on the motion to dismiss reflects that the "victim requested dismissal by letter to our office," which was then filed on June 18, 2002.

**Malicious Prosecution**

To prevail on a malicious prosecution claim, a plaintiff must establish the following elements:

– the commencement of a criminal prosecution against the plaintiff,

– initiation or procurement (causation) of the action by the defendant,

9

–   termination of the prosecution in the plaintiff's favor,

–   the plaintiff's innocence,

–   the absence of probable cause for the proceedings,

–   malice in filing the charge, and

–   damage to the plaintiff.

*Richey*, 952 S.W.2d at 517.   I agree with the majority that actions for malicious prosecution are not favored.  *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex. 1994).  We must be mindful of the delicate balance between protecting against wrongful prosecution and encouraging the reporting of criminal conduct. The failure to prevail after the institution and prosecution of a suit is not regarded as malicious; one may not recover in an action for malicious prosecution because the opposing party was mistaken about the strength of a claim.  *Sakowitz, Inc. v. Steck*, 669 S.W.2d 105, 107 (Tex. 1984), *overruled on other grounds*, 767 S.W.2d 686, 690 (Tex. 1989); *Griffin v. Rowden*, 702 S.W.2d 692, 694 (Tex. App.—Dallas 1985, writ ref'd n.r.e.).  Good faith litigants should be assured access to the judicial system.   If the elements of the cause are proved, however, liability is established as with any other cause of action.

As her grounds for summary judgment, Bell asserts that: (i)Weaver "fails to establish" the elements of lack of probable cause, malice, and Weaver's innocence; (ii) Bell did not cause the commencement of the criminal proceedings; and (iii) the criminal proceedings did not terminate in Weaver's favor.  Because the burden is on Bell—not Weaver—to negate at least one of these elements, and she did not do so, I would conclude that Bell did not establish her entitlement to

summary judgment on these grounds. I do not say that Bell could not meet her summary judgment burden; I say only that, on this record, she has not done so.

*Absence of Probable Cause*

In urging as her first ground for summary judgment that Weaver "fails to establish that [Bell] lacked probable cause," Bell relies on the presumption in an action for malicious prosecution action that the defendant "acted reasonably and in good faith and had probable cause to initiate the underlying criminal proceeding." *See Richey*, 952 S.W.2d at 517-18. She argues that Weaver's allegation in his petition fails to overcome this presumption and that "the only inquiry is whether it was reasonable for [Bell] to believe that a crime had occurred based on the facts as she reasonably believed them to be." On appeal, Bell urges that "[w]hat facts and circumstances amount to probable cause is a pure question of law." To support this ground, she references Weaver's allegations in the first amended original petition, but points to no proof.

In the context of a malicious prosecution cause of action, probable cause is defined as the existence of facts and circumstances that would excite a belief in a reasonable person, acting on the facts within his knowledge, that the person charged is guilty of a crime. *Richey*, 952 S.W.2d at 517; *Akin v. Dahl*, 661 S.W.2d 917, 921 (Tex. 1983). I agree with Bell that the question is not what the actual facts are, but what the defendant honestly and reasonably believed the facts to be. *Richey*, 952 S.W.2d at 516; *Akin*, 661 S.W.3d at 920-21. "Once a citizen has probable cause to report a crime, there can be no malicious prosecution even if the subsequent report fails to fully disclose all relevant facts." *First Valley Bank v. Martin*, 144 S.W.3d 466, 470 (Tex. 2004). But probable cause is not always a question of law. Whether probable cause is a question of law or a

11

mixed question of law and fact depends on whether the parties dispute the underlying facts. *Richey*, 952 S.W.2d at 518. When the facts underlying the defendant's decision to prosecute are disputed, the trier of fact is charged with resolving conflicts in the evidence to determine if probable cause exists. *Id*. If the facts are uncontested, then the question of whether the defendant acted based upon probable cause becomes a question of law to be decided by the court. *Id*.

Bell relies on *Richey v. Brookshire Grocery Co.* and *Forbes v. Lanzl* to support her argument that the summary judgment was properly granted based solely on the presumption that she, as the defendant, acted reasonably, in good faith, and with probable cause. *See Richey*, 952 S.W.2d 515; *Forbes*, 9 S.W.3d 895 (Tex. App.—Austin 2000, pet. denied). Importantly, both cases were jury trials rather than summary judgment proceedings, and are therefore distinguishable from this case.[2] In *Richey*, the supreme court determined that the underlying facts determining probable cause were undisputed. 952 S.W.2d at 518. In *Forbes*, the question was whether Lanzl produced any evidence to defeat the presumption that Forbes acted reasonably and in good faith and had probable cause to bring a complaint. 9 S.W.3d at 901.

A person may be guilty of criminal trespass if the person "enters or remains on or in property . . . of another without effective consent or he enters or remains in a building of another without effective consent and he: (1) had notice that the entry was forbidden; or (2) received notice

---

[2] To negate other elements of malicious prosecution, Bell also relies on the case of *Browning-Ferris Industries, Inc., v. Lieck*, 881 S.W.2d 288 (Tex. 1994). *Browning-Ferris* also involved a jury trial—not a summary judgment—as does a more recent case, *First Valley Bank v. Martin*, 144 S.W.3d 466 (Tex. 2004). *See also Ellis County State Bank v. Keever*, 888 S.W.2d 790 (Tex. 1994); *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82 (Tex. App.—San Antonio 2003, pet. denied) (because facts underlying decision to prosecute were disputed, issue presented to jury).

to depart but failed to do so." Tex. Penal Code Ann. § 30.05 (West 2003 & Supp. 2004-05). For Bell to be entitled to summary judgment, she must establish that she did not lack probable cause or, in other words, that she had probable cause for initiating the prosecution for criminal trespass.

Although a party may attach an entire deposition to the motion for summary judgment, this does not relieve the proponent of the motion from its burden of pointing out to the trial court the evidence on which the proponent relies. *See Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989); *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ). A summary judgment may be based on the uncontroverted testimonial evidence of an interested witness if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted. Tex. R. Civ. P. 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). In addition, affidavits must set forth facts and cannot be conclusory. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). "Subjective beliefs" are not susceptible to being readily controverted and, therefore, are not competent summary judgment evidence. *Texas Div.-Tranter, Inc. v. Carrozza*, 876 S.W.2d 312, 314 (Tex. 1994); *Allied Chem. Corp. v. DeHaven*, 752 S.W.2d 155, 158 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Bell fails to point to or marshal any proof to show there was any basis for the charge that Weaver committed criminal trespass. Her motion references Mendoza's deposition but fails to point to specific portions of the deposition as required.

The evidence relied upon comes primarily from Bell's affidavit attached to her motion and from her probable-cause statement to police. Much of the evidence here is conclusory or otherwise not competent. Bell asserts in her affidavit that Weaver "trespassed" and "had no right

13

to be on the property," but these are conclusory statements not susceptible of being readily controverted, and do not constitute competent proof. Bell acknowledges that she had no first-hand knowledge of an entry by Weaver but relied upon Mendoza's observations; Mendoza was unable to identify the person he saw enter the house and his testimony was in other respects contradictory to Bell's affidavit. Whether Weaver entered onto Bell's property without consent is a question of fact. Bell's averments that her attorney called Weaver, or that the owner of ECO reported a call from Mendoza, do not constitute competent evidence of either (i) Weaver's intent in coming on the premises or (ii) his knowledge that he was barred from the premises. This evidence falls short of the evidence required to establish Bell's entitlement to summary judgment. Based on the summary judgment record, I would hold that Bell did not establish with competent proof that she had probable cause.

*Procurement of Prosecution*

Bell also asserts that she did not cause the commencement of criminal proceedings. She urges that she did not "procure" the prosecution because she never signed a complaint or formal charge but only a written statement. She also suggests that her unsigned and undated letter to the prosecutor—evidently after Weaver's arrest—establishes that she never had any intent to prosecute and that the prosecution was dismissed *because* of her letter.

In a suit for malicious prosecution, a plaintiff must prove that the defendant "initiated" or "procured" a criminal proceeding against him. *See Richey*, 952 S.W.2d at 517. "Initiation" is demonstrated by evidence that the defendant filed formal charges against the plaintiff.

14

*Browning-Ferris Indus., Inc.*, 881 S.W.2d at 293.  "Procurement" is broader and is defined as follows:

> A person procures a criminal prosecution if his actions were enough to cause the prosecution, and but for his actions the prosecution would not have occurred.  A person does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false.  A criminal prosecution may be procured by more than one person.

*Id.*

In his petition, Weaver alleges that Bell knowingly provided false information to the Austin Police Department.  Bell urges that she has negated this element, as it is "undisputed that all of Bell's statements contained both in her written statement, required by police, and in her letter to the prosecuting attorney's office explain that she was not present at the time of the incident and that she was only relaying what the witness told her."

Citing *McHenry v. Tom Thumb Page Drug Stores*, Bell urges that, since she was not the party *initiating* the prosecution and she fully and fairly presented all facts, she has carried her burden.  696 S.W.2d 664 (Tex. App.—Dallas 1985, writ dism'd).  *McHenry* is distinguishable.  In that case, the defendant gave a statement to the police as a witness to a shoplifting incident.  *Id*. at 665.  Here, Bell was the complainant who reported the incident to the police upon advice of her lawyer.  She does not establish that the prosecution would have occurred without her involvement.  Indeed, because she also claims that charges were dropped when she sent her unsigned and undated letter to the prosecutor, it would seem that her initial statement either "procured" the charge or is,

15

at the very least, inconsistent with her claim that she did not procure the prosecution. Moreover, her statement in the unsigned letter that any "decision to prosecute would be the decision of the police department and prosecuting attorney" does not constitute competent proof. In addition to the fact that it is unsigned and undated, the statements are self-serving, conclusory, and are not capable of being readily controverted within the meaning of Rule 166a(c). *See* Tex. R. Civ. P. 166a(c).

Moreover, Bell's December 19 statement—asserting that Weaver came onto her property and "stole materials"; that he "had no right to come onto my property"; that Weaver "maliciously interfere[d] with current construction of [her] driveway . . . [and] invaded her privacy and sense of safety"; and that Bell "personally fears for [her] safety"—is at odds with her distancing herself from the procurement of the prosecution, and is internally inconsistent with the assertion in her subsequent, but undated letter that she never had any intent to pursue prosecution.

Even assuming that the decision to prosecute was left to the discretion of the prosecutor or other law enforcement officials, Bell does not establish that the information she gave is not false or misleading. It is, in any event, internally inconsistent and creates a fact question on this element. In Bell's December 19 affidavit, for example, she avers that at no time did Weaver work inside the home or have permission to enter the home. This is at odds with Weaver's allegation and the affidavit of Weaver's employee, Tony Rangel, that Bell gave Weaver and Rangel keys and access to the house and property; instead of proving her case, it creates a fact question.[3]

---

[3] Rangel's affidavit is attached as an exhibit to plaintiff's petition. As with other summary judgment evidence, affidavits that are attached to pleadings rather than to the motion for summary judgment do not constitute summary judgment evidence. *See*, *e.g.*, *Laidlaw Waste Sys., Inc. v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); *Boeker v. Syptak*, 916 S.W.2d 59, 61-62 (Tex. App.—Houston [1st Dist.] 1996, no writ). But Bell cites to this affidavit in her statement of facts

16

Whether permission to enter the premises was withdrawn and, if so, when it was withdrawn, is not established by Bell's proof.

*Malice*

Bell also fails to carry her burden of showing that Weaver was unable to establish that Bell acted with malice. Under proper summary judgment analysis, Bell bears the burden of negating malice in initiating the prosecution. The only proof on which she relies is her undated and unsigned letter to the office of the county attorney, stating: "I do not, and never had, any desire or intention to punish Mr. Weaver for his alleged acts." Bell asserts that if she did not initiate the prosecution, then she could not have acted with malice.

Summary judgment evidence must be presented in a form that would be admissible in a conventional trial proceeding. *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971). A document relied on to support a summary judgment must be admissible in evidence and sound in terms of its own evidentiary value. Bell's letter is not sufficient proof to sustain a summary judgment under our standards. The issue is whether Bell acted with malice at the time the prosecution was initiated, not at some point in time after the prosecution had commenced, and her letter appears to have been sent after Weaver's prosecution began. Because there is no proof as to who initiated the prosecution, nor any proof that Bell did not procure it, Bell has failed to carry her burden to establish that she did not act with malice.

---

on appeal to establish that Weaver trespassed on her property.

*Innocence and Termination of Criminal Prosecution in Weaver's Favor*

Bell urges that Weaver has not—and cannot—establish his "innocence" because the prosecution was dismissed rather than "terminated" in Weaver's favor and because there were no fact findings. Weaver responds that the statute of limitations has run and therefore bars future prosecution of Weaver. Accordingly, he asserts that the prosecution "terminated" in his favor because he was not convicted of criminal trespass, and now cannot be because of the limitations bar.

In *Davis v. City of San Antonio*, the Texas Supreme Court concluded that a dismissal of all charges against the plaintiff because of limitations problems constituted a favorable disposition: "Even when the termination is indecisive as to the accused's guilt, it is nevertheless favorable if the prosecution cannot be revived." 752 S.W.2d 518, 523 (Tex. 1988); *see also San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 95 n.2 (Tex. App.—San Antonio 2003, pet. denied) ("The dismissal of an indictment is relevant to whether the prosecution terminated in the plaintiff's favor.").

Again, Bell seeks to shift the burden of proof in this summary judgment context by asserting that Weaver must show he was innocent. Bell had the burden to establish her entitlement to summary judgment and failed to point to any proof in support thereof. Here, the only proof in the record shows that the prosecution was dismissed at the "request of the complainant" and upon motion of the prosecuting attorney, and subsequently was barred by limitations. Bell has not carried her burden to negate the elements of innocence and termination of criminal prosecution in Weaver's favor.

18

In sum, Bell failed to negate the elements raised by her motion for summary judgment. The proof presented will not sustain a summary judgment under our standards. It is not clear, direct, or positive; it is not free from contradictions and inconsistencies; and it could not have been readily controverted. Tex. R. Civ. P. 166a. Even if the evidence establishes Bell's entitlement to summary judgment on any element presented in the motion, the myriad fact questions presented make this case unsuitable for summary judgment at this stage. It is difficult to conceive of any aspect of probable cause for criminal trespass in this case that is not disputed. The parties sharply dispute whether and for what duration Weaver had consent to enter Bell's house and/or premises, and whether Weaver entered Bell's house on December 7. There is no competent evidence that, prior to the events that transpired, Weaver had notice that entry was forbidden. Likewise, the elements of malice and innocence present fact questions.

Weaver also challenges the grant of summary judgment on the ground that Bell's motion only addressed malicious prosecution—one of the four causes of action that was asserted in Weaver's first amended original petition. He argues that, because Bell failed to address the other three causes of action, the court erred in granting a summary judgment on Weaver's entire case. Bell contends that malicious prosecution was the only claim asserted against her, and that the remaining claims were asserted against other defendants. Although the lengthy *pro se* amended petition asserting four causes of action against ten defendants is not a model pleading, it does allege other causes of action against the various defendants that arise from the same facts as the malicious prosecution allegation.

19

A summary judgment for the defendant, disposing of the entire case, is proper only if, as a matter of law, the plaintiff could not succeed upon any theories pleaded. *See Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983); *In re A.L.H.C.*, 49 S.W.3d 911, 915 (Tex. App.—Dallas 2001, pet. denied). If the pleadings are deficient, the proper way to challenge the deficiency is to specially except. A summary judgment should not be based on a pleading deficiency that could be cured by amendment. *See* Tex. R. Civ. P. 90-91 (providing for special exceptions for defects in pleadings and waiver of defects for failure to specially except). A summary judgment may not be granted, as a matter of law, on a cause of action not addressed in the summary judgment proceeding. *Chessher v. Southwestern Bell Tel. Co.*, 658 S.W.2d 563, 564 (Tex. 1983).

A judgment that grants more relief than a party is entitled to receive is erroneous and subject to reversal. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record"). We review a summary judgment that grants more relief than requested as we do any other final judgment and do not reverse for that reason alone, as under prior law. *See Bandera Elec. Coop., Inc. v. Gilchrist*, 946 S.W.2d 336, 337 (Tex. 1997). A summary judgment cannot be granted or affirmed on a ground not expressly presented in the summary judgment motion. *Lehmann*, 39 S.W.3d at 203 ("Finality 'must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'") (citation omitted); *McConnell*, 858 S.W.2d at 341. Although the judgment purported to be final, it is not clear and unequivocal from the record that all of Weaver's claims as to Bell were the subject of a final judgment. *See Lehmann*, 39 S.W.3d. at 206.

20

Viewing the summary judgment evidence in a light most favorable to Weaver and indulging all reasonable inferences in his favor—as we are required to do under our standard of review—and without regard to the merits of the lawsuit, I would conclude that the present posture of this case demonstrates that the movant is not entitled to summary judgment and would hold that the district court erred in granting summary judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Filed:   June 10, 2005