**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00087-CV**
_____

**SOPHIE CRUM AND JULIE A. CRUM, Appellants**

**V.**

**NATALIE DRAKE AND RICHARD DRAKE, INDIVIDUALLY, AND AS
NEXT FRIEND OF CHARLES ALLEN DRAKE, Appellees**

**On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 23-08-12581-CV**

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, Appellants Sophie Crum and Julie A. Crum (collectively "the Crums"), appeal the trial court's Order denying their Texas Citizen's Participation Act ("TCPA") motion to dismiss claims for defamation, malicious prosecution, intentional infliction of emotional distress, and conspiracy filed by Appellees Natalie Drake and Richard Drake, individually, and as next friend of Charles Allen Drake (collectively "the Drakes"). *See* Tex. Civ. Prac. & Rem.

1

Code Ann. §§ 27.001-27.011 (the TCPA), 51.014(a)(12) (authorizing an interlocutory appeal of an order denying a motion to dismiss filed under the TCPA section 27.003). For the reasons explained below, we reverse the trial court's Order and remand this cause to the trial court for entry of a judgment of dismissal as to the Drakes' claims against the Crums and for the trial court to make a determination of reasonable attorney's fees and costs to be awarded to the Crums.

## BACKGROUND

The Drakes' Original Petition

The Drakes filed an Original Petition against the Crums, alleging causes of action for intentional infliction of emotional distress, defamation, malicious prosecution, and civil conspiracy.[1] The Drakes alleged that the actions of Julie A. Crum ("Julie") and her daughter, Sophie Crum ("Sophie"), who attended the John Cooper School with Charles Allen Drake ("Charlie"), caused Charlie to be arrested and expelled from the John Cooper School. The Drakes alleged that Sophie made a false report that Charlie threatened to shoot up the school and shoot Sophie and that Julie relayed Sophie's false report to Stephen Popp ("Popp"), the headmaster of the John Cooper School. The Drakes alleged that based on the Crums' false reports, Popp contacted law enforcement and filed a criminal complaint against Charlie.

---

[1] The Drakes also filed suit against Isabelle Guidry, Abigail Guidry, and DeAnn R. Guidry, who are not parties to this appeal.

2

The Drakes asserted that Sophie and other girls at school bullied and ridiculed Charlie in an attempt "to gain a reaction or cause Charlie to make a threat toward them so they could report it to the administration." The Drakes maintained that in April 2022, Sophie and the other girls called Charlie a school shooter and then egged "him on to say he is going to shoot up the school, to which he eventually responds by saying something along the lines of, 'yea right, I'm going to shoot up the school.'" The Drakes asserted that Julie should have known Sophie's report was "nonsense[,]" and that criminal proceedings were initiated against Charlie due to Julie's allegations that were based on the "nonsense" Sophie published. The Drakes alleged that Sophie and the other girls falsely reported that Charlie threatened to shoot up the school in January 2022 and March 2022 and that they "'feared for their life.'" The Drakes also alleged that in April 2022, Sophie accused Charlie of threatening to shoot her and "memorialize[d] it by taking a Snapchat photo with friends where at least one of them held up a finger gun with Charlie in the background[.]" The Drakes maintained that Charlie never made "any kind of credible threat," and that Sophie and the other girls "only reported their 'fear' for their life *months* after the alleged threats took place."

The Drakes alleged that because of the Crums' false reports, Charlie was arrested, expelled from school, and not allowed to compete with his dance team, causing the Drakes' financial harm and Charlie significant emotional distress, loss

3

of liberty, loss of scholarships and college opportunities, and damage to his reputation. Despite Charlie's criminal case being dismissed shortly after his arrest, the Drakes asserted that Charlie will never be able to recover his good name and will feel the effects of the Crums' actions for the rest of his life. The Drakes asserted that Sophie and the other girls conspired to intentionally inflict emotional distress on Charlie and to defame and/or maliciously prosecute him.

The Crums' Answer and Motion to Dismiss under the TCPA

The Crums filed a First Amended Original Answer asserting a general denial and affirmative defenses, including the defenses of truth and substantial truth. The Crums affirmatively asserted that the alleged defamatory statements are qualifiedly privileged, protected free speech about a matter of public concern, and protected under the TCPA.

The Crums filed a Motion to Dismiss under the TCPA, arguing the Drakes' claims must be dismissed because their lawsuit is based on or in response to the Crums' exercise of their right to free speech. The Crums maintained that reporting Charlie's statements that he was going to shoot up the school to Popp is a matter of public concern and any reporting of those statements was truthful. The Crums argued that the Drakes failed to provide clear and specific evidence of a prima facie case for each essential element of their claims. The Crums also argued their communications regarding Charlie's statements are qualifiedly privileged and the Drakes could not

4

meet their burden to establish malice by the Crums. The Crums asserted that the gravamen of the Drakes' defamation action included: Sophie publishing a photo on Snapchat accusing Charlie of threatening to shoot her; the Crums allegedly creating a false report that Charlie threatened to shoot up the school; and Julie reporting that Charlie threatened to shoot up the school to Popp when she should have known it was "nonsense[.]" The Crums offered the following evidence in support of their Motion to Dismiss: the Drakes' Original Petition; Affidavit of Brian Thomas Crum ("Brian"); Affidavit for Directive to Apprehend/Directive to Apprehend from the Juvenile Court of Montgomery County; and Affidavit of Popp.

In their Original Petition, the Drakes alleged that Sophie made a false report but then admitted Charlie said, "something along the lines of, 'yea right, I'm going to shoot up the school.'" The Drakes asserted that Sophie only reported her fear months after the alleged threats took place, and if the threats were credible, they would have been immediately reported. The Drakes stated that Sophie and her friends, Isabelle Guidry ("Isabelle") and Abigail Guidry ("Abigail"), "constantly bullied Charlie for many years[,]" and "would constantly pester Charlie, seemingly in an attempt to gain a reaction or cause Charlie to make a threat toward them so they could report it to the administration." The Drakes explained that Charlie "never once made any kind of credible threat, at best, he would jokingly respond . . . in an attempt to get them to leave him alone." The Drakes asserted that Sophie, Isabelle,

5

and Abigail created the false report and conspired to intentionally inflict emotional distress on Charlie and maliciously prosecute him, and the Crums' false statements caused Charlie to be prosecuted.

In his affidavit, Brian, Sophie's father, explained that in June 2022, he was discussing a recent school shooting with Sophie, who told him Charlie had "twice made statements during the Spring 2022 semester to the effect that he was going to 'shoot up' the school[]" and had also told Sophie "he was going to personally shoot her." Brian stated that Sophie told him "Charlie's statements were unprompted and not part of any joke[,]" and she "didn't think Charlie was being serious, but that she couldn't be sure since his interactions with others were frequently odd." Brian stated that he took the matter "'very seriously'" and he and Julie agreed that there "was no way for us to be certain whether Charlie had made legitimate threats or was just seeking attention." Brian explained that although Sophie did not want him to report it, he "concluded the only safe and responsible thing to do was to confidently report this information to the school." Brain explained that he met with Popp and told him about Charlie's statements, and he told Popp he clearly "could not determine whether the statements were legitimate threats or were baseless teenage exaggerations but felt that was a determination the school was in the best position to make." Brian stated that Popp asked to interview Sophie, who did not want to speak with Popp, but when Brian and Julie "insisted[,]" Julie and Sophie met with Popp.

Brian explained that after Popp met with the school's Board of Trustees, the matter was referred to Montgomery County law enforcement, who came to their home to speak with Sophie alone. Brian explained that following Sophie's interview, "the officers stated they had other witnesses to interview but likely had sufficient information to arrest Charlie." Brian stated he told the officers "that we had no way to know if Charlie's statements were a legitimate threat to the school and other students, or if he was just acting out." Brian also stated that "we reported the matter to the John Cooper School and cooperated with law enforcement following the school's reporting of this matter, none of Julie, Sophie, or I ever took any action to influence or encourage Charlie's arrest, expulsion from the John Cooper School or any other negative consequences he may have experienced as a result." Brian explained that Sophie cried upon hearing that Charlie might be arrested, and he was unaware of any instance of Sophie bullying Charlie as alleged by the Drakes.

In the Affidavit for Directive to Apprehend, Byron Charles ("Charles") of the Montgomery County Attorney's Office, asserted that he reviewed the investigation by the Montgomery County Precinct 3 Constable's Office and believes that Charlie committed the offense of Exhibition, Use, or Threat of Exhibition or Use of Firearms and that there is probable cause to believe that he has engaged in delinquent conduct and/or conduct indicating a need for supervision. Charles noted that Popp contacted law enforcement to inform them of the Crums' complaint about Charlie's threats to

7

commit acts of violence at the school. Charles stated that Popp reported that Charlie "had made threats on multiple occasions about shooting other students or shooting up school[,]" and Charlie "is on medication for depression and is known to make comments to get a reaction out of people and was known to do things for attention, such as standing on his desk and being a behavioral problem." Charles explained that Sergeant Terrell spoke with Sophie, who reported that Charlie made a random statement in January 2022, stating "'I'm gonna shoot the school.'" Sophie reported that Charlie made a similar statement in March 2022. Charles stated Sophie told him that on April 20, 2022, the anniversary of the Columbine High School Shooting, Charlie said he was going to shoot her. Charles asserted that Sophie told Sergeant Terrell that "at the time of this threat she was shocked and immediately took a Snapchat 'SNAP' photograph with herself, her two friends . . . with a caption explaining that" threat.

Charles noted that Sergeant Terrell spoke with Sophie's two friends, one of whom reported that Charlie "makes threats of violence all the time[,]" including "threatening to shoot up the school[,]" and "people no longer take him serious." The mother of one of Sophie's friends was concerned for the safety of her child, who was on a "'kill list.'" Charles stated that although the threats were made in the past, he believed that "due to the seriousness of the threats, the fear of the complainant and her family, and concern over the Juvenile-Respondent's mental stability, [he] may

8

be a danger to himself and/or the public." Charles requested that the Juvenile Court of Montgomery County issue a Directive to Apprehend Charlie.

In Popp's Affidavit, he explained that after receiving an email from Brian requesting to meet about a school safety issue, he met with Brian, who reported that when speaking with Sophie about a school shooting, she told him that Charlie had twice said he would "'shoot up the school.'" Popp stated that Brian "did not know how serious the threats were and he knew they were made months ago, but he believed it was still important for the school to know about them." Popp explained that he met with Sophie, who "told me the same things that her father told me during our meeting." Based on his conversation with the Crum family, Popp notified the Chair of the school's Board of Trustees and the Montgomery County Sheriff's Office of Charlie's statements. Popp explained he was "obligated by statute to refer any potential threat to law enforcement[,]" and told them the details that Brian and Sophie reported, but the Crum family did not ask him to notify law enforcement. Popp noted that he reviewed Sophie's file and did not find any reports or complaints of her bullying or harassing other students.

<u>The Drakes' Motion for Discovery and Response to the Crums' Motion to Dismiss under the TCPA</u>

The Drakes filed a Motion for Time to Conduct Reasonable Discovery, and the trial court granted the Drakes' Motion and allowed them to take depositions. The Drakes filed a Response to the Crums' Motion to Dismiss under the TCPA, arguing

the TCPA does not apply to the Crums' statements because they did not meet the burden of showing they believed the statements were true. The Drakes also argued that the Crums' Motion to Dismiss fails because (1) it contains no affidavit testimony from Sophie or Julie showing they were exercising their right to free speech; and (2) no evidence from Sophie concerning Charlie's statements. The Drakes argued that the Crums provided only hearsay evidence from Brian and Popp concerning Charlie's statements Sophie allegedly heard. The Drakes argued the Crums provided "no evidence about what they said or that they believed what they said[,]" and "the core of this case is that the Crums lied."

To support their contention that the Crums failed to show the Drakes' legal action is based on or in response to the Crums' right of free speech, the Drakes attached the following evidence to their Response: excerpts from Sophie's deposition; email from Brian to Popp; email from Popp; Declaration of J. Randal Bays ("Bays"); excerpts from Popp's deposition; email from Julie; Declaration of Charlie; excerpts from Isabelle's deposition; Declaration of Natalie Drake ("Natalie"); Declaration of Richard Drake ("Richard"). In the event the trial court found the TCPA applied, the Drakes maintained they had met their burden to provide clear and specific evidence to establish a prima facie case for each essential element of their claims, and the Crums failed to establish the affirmative defense of qualified privilege regarding the defamation cause of action.

10

In her deposition, Sophie testified that during Spanish class in January 2022, Charlie "'said, I'm going to shoot up the school.'" Sophie explained that she just brushed it off and did not report it. Sophie testified that in March 2022, Charlie again said "he was going to shoot up the school[,]" but she did not think his comment was serious and made no report. Sophie testified that on April 20, 2022, "Charlie told me he was going to shoot me one day[,]" but she did not take the comment seriously and did not report it. Sophie explained that she took a photograph with two friends when he made the comment because she was shocked, and she captioned it and saved it in her Snapchat memories. Sophie testified that the Snapchat photograph saved in her memories was private, and she did not share it on Snapchat, but she showed her parents and texted the photograph to her mother.

Sophie explained that she told her parents about Charlie's comments in May or June 2022, and her parents did not report it to law enforcement but made her talk to Popp. Sophie testified when she and her mother talked to Popp in July, she told Popp about the comments Charlie made to her at school, and she believed her identity would be protected, which was "[e]xtremely[]" important to her. Sophie also told two law enforcement officers about Charlie's comments.

The Drakes' evidence includes a July 20, 2022, email Brian sent to Popp stating, "Sophie recently brought something to my wife's and my attention relating to school safety that I'd like to discuss with you confidentially." The evidence also

11

includes an April 25, 2023, email from Popp to Detective Bridges, explaining that the Drakes sent a demand letter threatening a lawsuit to him and the parents of the minors who were interviewed by the police concerning Charlie, and Popp inquired as to how the Drakes got the names of the minors.

In his deposition, Popp, the head of the John Cooper School, testified that he met with Sophie and Julie, in July 2022, who reported that Sophie overheard Charlie make threatening comments to shoot up the school and Sophie a few months earlier. Popp testified that Sophie reported two incidents in July 2022, when she said she heard Charlie threaten to shoot up the school, and reported the April 20, 2022, incident when Charlie said he would shoot her. Popp explained that Sophie reported that Charlie made the threat in the presence of other students, and Sophie took a selfie photograph with three other students at school on April 20 and included the caption, "'Sophie, I'm going to shoot you one day[,]'" and Charlie's name. A July 22, 2022, email from Julie to Popp included the photograph Sophie took.

In her deposition, Isabelle testified she had no personal knowledge of Charlie saying he was going to shoot up the school or kill anyone. Isabelle testified that she never heard that Charlie threatened to shoot Sophie, but she did hear he had a kill list.

In his Declaration, Charlie stated he tried to avoid Abigail, Isabelle, and Sophie because they had "'mean girl' reputations." Charlie explained that Sophie

12

ridiculed him for being a male dancer at least once a month. Charlie stated that his responses to Sophie "were always an attempt to get her to leave me alone[,]" which usually worked. Charlie explained that the bullying picked up during the 2021-2022 school year, when Abigail, Isabelle, and Sophie would "ask me if I was going to shoot up the John Cooper School[] and refer to me as a school shooter." Charlie never reported the girls to the school or his parents because he feared nothing would be done and he would be subjected to more bullying.

Charlie explained that he asked his mother for advice on how to get people to leave him alone and she told him to "respond in the affirmative to let them think they heard what they wanted to get out of you." When the girls continued to pester him about being a school shooter, Charlie stated he would "simply agree with them or go along with the story they were telling[]" to avoid constant harassment. Charlie stated that "[n]o one other than those three girls had ever mentioned me shooting up the John Cooper School or a kill list[]" until March 2022 because the girls were telling other students he was a school shooter with a kill list. Charlie did not recall any interaction with Sophie on April 20, 2022, or know that it was the anniversary of the Columbine School shooting, and he denied telling Sophie he was going to shoot her. Charlie stated that he did not recall agreeing to anything Sophie said on April 20, and if he did, "it would have been responding jokingly in the affirmative, something like 'yeah sure whatever you say Sophie,' in an attempt to get her to leave me alone."

13

Charlie maintained that he had "absolutely no doubt that Sophie Crum was pushing me to 'threaten her' on April 20, 2022."

Charlie stated that his last contact with Sophie was in May 2022, when Sophie approached him and said, "'hey Charlie, threaten me!'" Charlie was confused on July 29, 2022, when police officers told him he was being charged with exhibition of a firearm on the school campus because he had never taken a gun to school or had access to a gun. Charlie maintained that he never had a kill list or made threats to shoot up the school or to kill Sophie, and he claimed he never reported the girls to his parents or the school because he knew their parents were school donors and nothing would be done. Charlie explained his parents hired an attorney, who got the charges promptly dropped, but he was expelled from school, had his reputation damaged, and experienced emotional distress and problems with his college application. Charlie stated Sophie's allegations are false and never happened.

The evidence includes the Declarations of Natalie and Richard, Charlie's parents. Natalie stated that Charlie had never been in trouble or had any kind of disciplinary infraction at school. Natalie explained that on July 29, 2022, law enforcement officers placed Charlie in handcuffs, took him for questioning, charged him with exhibition or use of a firearm, and detained him in the juvenile justice center. Natalie stated that Charlie never had access to a gun, and they spent $10,000 for an attorney, who secured Charlie's release from detention and kept Charlie from

14

being formally charged with any crime. Natalie explained that the arrest and detention caused Charlie to have increased anxiety and trouble sleeping, and he was on suicide watch for two months following his release. Natalie stated that despite there being no merit to the claims, Popp expelled Charlie from school, which required them to spend additional funds to enroll Charlie in a more expensive school. Natalie explained that Charlie was kicked off his competitive dance team and had his reputation tarnished, and he continues to suffer from anxiety because of the girls' lies. Natalie never knew the girls were bullying Charlie and claimed he was "sarcastically agreeing by saying things like 'yeah sure whatever' or 'ri[]ght,' when these girls asked if he was a school shooter or going to shoot up the school." Natalie maintained that "[t]hese sarcastic responses prompted these girls to create this false report[,]" when the girls "knew Charlie's responses were only to get them to leave him alone[.]"

In Richard's Declaration, he was surprised by Charlie's arrest for exhibition or use of a firearm because he had never been in trouble and had no access to a firearm. Richard explained that they spent money to hire an attorney and had to take Charlie to emergency visits with his psychologist and psychiatrist and place him on suicide watch. Richard stated that Charlie was never formally charged with any crime, but Popp expelled him from school although Charlie had not threatened

15

anyone. Richard explained that the girls' allegations ruined Charlie's reputation, caused him emotional distress, and caused his family to incur financial damages.

The Declaration of Bays, the Drakes' attorney, includes the attorney's fees the Drakes' incurred by filing Motions to Dismiss under the TCPA.

The Crums' Reply to the Drakes' Response to their Motion to Dismiss

The Crums filed a Reply to the Drakes' Response to their Motion to Dismiss. The Crums argued that Sophie did not report or allege that Charlie was going to shoot up the school; she reported he made statements that he was going to shoot up the school and her. The Crums argued that anonymous speech is protected by the First Amendment and that such protection is essential to prevent the chilling effect on students and families who may hesitate to report similar threats. The Crums maintained that they did not report the matter to law enforcement, but once Popp involved law enforcement, Sophie told the officers about the three statements she relayed to her parents and Popp. The Crums argued there was no evidence of coordination or collusion between the defendants, and no evidence that Julie made any independent statements to Popp or law enforcement. The Crums argued that Sophie spoke with law enforcement regarding a potential threat of school violence, an obvious matter of public concern, and the qualified privilege affirmative defense against defamation applies to good-faith communications upon which the author or the public has an interest and were made in good faith and without malice. The

16

Crums maintained that Sophie believed Charlie made the statements, and since proving a statement's truth is not a prerequisite for the qualified privilege defense to apply to the TCPA, they were not obligated to determine the truth or credibility of Charlie's statements before reporting them. The Crums argued that the Drakes could not refute the Crums' position that Charlie made the threats because of the plain language in their Original Petition, and the Drakes cannot escape that language by adding a credibility element and claiming Charlie never made a credible threat.

The Crums also argued that the First Amendment protects the rights of anonymous free speech to protect individuals from retaliation, and the Crums' desire for their identities to remain confidential or anonymous does not affect the First Amendment's application, nor does the fact that Sophie reluctantly spoke to Popp or law enforcement. The Crums later found and reported the following written statement in Sophie's yearbook: "'Sophie, you are alive (for now that is) – Charlie.'"

The Crums attached the following evidence to their Reply: Popp's deposition, Sophie's deposition, Bella Signorelli's ("Bella") deposition, Isabelle's deposition, Abigail's deposition, and documents from the John Cooper School. In his deposition, Popp testified that in July 2022, he investigated Brian's report that earlier that Spring Sophie heard Charlie make two comments about shooting up the school and a comment about shooting her. Popp explained he was concerned about the report because Sophie had been feeling concerned and shared it with her parents when they

17

were discussing the Uvalde school shooting. When Popp met with Sophie and Julie, Sophie affirmed that she heard Charlie twice make comments threatening to shoot up the school and that he also said he would shoot her. Popp testified that Sophie took the selfie photograph to document Charlie's behavior, and the Crums told him they were not sure what was going on with the comments and felt it was important to report them to Popp. Popp explained that he believed the Crums, and because Sophie and Julie had concerns about their safety for coming forward, he told them he would keep their report discreet.

Popp stated that after meeting with Sophie and Julie, he emailed the administrative leadership team and detailed what the Crums had reported. In his email, Popp noted that the Crums were "'not sure if the student was making the comment in jest, trying to rile up others, or if there were darker motives.'" Popp, who did not know if Charlie was a threat to the school, explained that he had a legal obligation to report the threats to the police, so he reported it to law enforcement without personally investigating. Popp spoke with Detective Bridges and Sergeant Terrell, who found Sophie to be credible and investigated the matter. Popp testified that Sergeant Terrell told him that Charlie "admitted to making the statements and contextualized those statements because it was being — pushing back for his dancing and that there were concerns about bullying." Popp testified that Charlie told Sergeant Terrell he did not report any bullying because he knew the school

18

would do something, but Charlie's parents disputed that point and claimed Charlie believed the school would do nothing. Popp explained that he did not find any reports of Sophie bullying Charlie at school. Popp also testified that Sergeant Terrell told him the Crums were concerned about retaliation for coming forward, but Sergeant Terrell did not think there was an imminent threat because there were no guns and Charlie was being detained. Popp stated that Sergeant Terrell told him that the county attorney would determine the next steps since Charlie admitted making the statements.

Popp testified he learned that no charges were filed after he dismissed Charlie from school, but he stood by his decision because Charlie admitted to the police that he made the threatening statements. Popp explained that Sergeant Terrell and Detective Bridges both expressed concern, and Sergeant Terrell said they did the right thing by speaking up when the threat was voiced and that the girls did what they should have done by participating with the police investigation. Popp testified that he still believes that to be true because the police confirmed Sophie's report was true.

In her deposition, Bella, Sophie's friend, testified that Spring 2021, she heard Charlie had a kill list. Bella explained that she was not alarmed because Charlie often said things, and she did not report it. Bella testified that Sophie had never sent her a

Snapchat message about Charlie. Bella also testified that Sophie was a truthful person.

Isabelle testified that she never bullied Charlie or saw anyone else bully him. Isabelle explained that she had no personal knowledge of Charlie saying he was going to shoot up the school or kill anyone, but she heard Charlie had made such statements and had a kill list. Isabelle testified that she did not know if Charlie threatened to shoot up the school because she did not remember him saying that. Isabelle explained that she did not remember Charlie telling Sophie he was going to shoot her, and she first saw the Snapchat photograph Sophie took when Sergeant Terrell showed it to her.

Abigail, Isabelle's sister and Sophie's friend, testified she never bullied Charlie, nor did she see anybody else do so. Abigail testified that she does not remember hearing Charlie threaten to shoot up the school or kill anybody. Abigail explained that she heard Charlie tell someone making a noise that he found annoying that "'you're moving up on my kill list.'" Abigail told her parents and Sergeant Terrell that Charlie had a kill list, but she did not report it to the school.

The trial court's Order

After considering the Crums' Motion to Dismiss under the TCPA, the Drakes' Response, and any replies, the trial court denied the Crums' Motion, found the

Motion to be frivolous, and awarded the Drakes attorney's fees. The Crums filed this interlocutory appeal.

## STANDARD OF REVIEW

We review a trial court's denial of a TCPA motion to dismiss de novo. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018); *Walker v. Hartman*, 516 S.W.3d 71, 79-80 (Tex. App.—Beaumont 2017, pet. denied). We consider the pleadings, evidence we could consider under Rule 166a, and affidavits stating facts on which liability or any defense is based in the light most favorable to the nonmovant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d 579, 587 (Tex. 2015) (orig. proceeding); *see also Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019) (citation omitted). We also review de novo whether the parties met their burdens of proof under section 27.005 of the TCPA. *See Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 45-46 (Tex. 2021) (citation omitted); *Hall*, 579 S.W.3d at 377.

## TCPA FRAMEWORK

The TCPA is meant "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002. The TCPA instructs courts to liberally construe

21

it to ensure its stated purpose and intent are fully effectuated, but it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." *See id.* § 27.011(a), (b); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (citation omitted) (noting directive to liberally construe). Under the TCPA, a party may move to dismiss a "legal action" that is "based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 131 (Tex. 2019).

The TCPA "provides a three-step process for the dismissal of a 'legal action' to which it applies." *Montelongo v. Abrea*, 622 S.W.3d 290, 296 (Tex. 2021) (citing *Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 691 (Tex. 2018)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)-(d). First, the movant bears the initial burden to show that the "legal action is based on or is in response to[ ]" the movant's exercise of: "(A) the right of free speech; (B) the right to petition; or (C) the right of association[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)(1)(A)-(C). If the movant establishes that the nonmovant's claim implicates one of these rights, the burden shifts to the nonmovant to "'establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *Lipsky*, 460 S.W.3d at 587 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c)). A "prima

22

facie case" means "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590 (citation omitted). It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004)). Clear and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591. Finally, if the nonmovant establishes their prima facie case, the burden shifts back to the movant to establish each essential element of an affirmative defense by a preponderance of the evidence. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d); *Youngkin v. Hines*, 546 S.W.3d 675, 679-80 (Tex. 2018); *Coleman*, 512 S.W.3d at 899.

## ANALYSIS

In issue one, the Crums argue the trial court erred by failing to find that the TCPA applies to the Drakes' legal action. The Crums contend that they satisfied their burden to show the TCPA applies to the Drakes' claims, which are based on or in response to the Crums' exercise of their constitutional rights of free speech and to petition. The Crums argue that communications about school safety and potential criminal activity are matters of public concern.

In determining whether the Crums met their burden to demonstrate that the Drakes' claims were based on the Crums' exercise of right of free speech, we consider the pleadings, evidence a court could consider under Texas Rule of Civil

Procedure 166a, and any supporting and opposing affidavits. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). "We decide the applicability of the TCPA based on 'a holistic review' of the pleadings and supporting and opposing affidavits." *Montano*, 2021 WL 2963801, at \*4 (citing *Adams*, 547 S.W.3d at 897).

The TCPA defines the "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3); *see Montano v. Cronan*, No. 09-20-00232-CV, 2021 WL 2963801, at \*4 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.). The TCPA further defines "matter of public concern" as:

> . . . a statement or activity regarding:
>
> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
>
> (B) a matter of political, social, or other interest to the community; or
>
> (C) a subject of concern to the public.

*Id.* § 27.001(7). "The phrase 'matter of public concern' commonly refers to matters 'of political, social, or other concern to the community,' and a subject of general interest and of value and concern to the public, as opposed to purely private matters." *Montano*, 2021 WL 2963801, at \*4; *see also Creative Oil*, 591 S.W.3d at 135 (quoting *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)). "A 'matter of public concern' includes an issue related to health or safety[.]" *MediaOne, L.L.C. v.*

24

*Henderson*, 592 S.W.3d 933, 940 (Tex. App.—Tyler 2019, pet. denied). "Public matters include, among other things, 'commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions.'" *Brady*, 515 S.W.3d at 884 (citation omitted). The statute defines "communication" as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1).

Applying the plain language of the TCPA, the Crums' statements to Popp and law enforcement fall under the statutory definition of "communication." *See id.* The Drakes' contention that the Crums' statements are false is of no consequence to the TCPA's application because, "the truthfulness of the complained-of statements is not determinative of whether the TCPA applies." *See QBE Americas, Inc. v. Walker*, No. 05-20-00439-CV, 2021 WL 1976459, at *5 (Tex. App.—Dallas May 18, 2021, no pet.) (mem. op.); *see also Elite Auto Body LLC v. AutoCraft Bodywerks, Inc.*, 520 S.W.3d 191, 204-05 (Tex. App.—Austin 2017, pet dism'd) (explaining that the determination of whether the communications were false is not a component of the movant's initial burden but part of the nonmovant's burden to establish a prima facie case for each essential element of its claim).

The TCPA case law shows that reporting alleged criminal activity in the community is a matter of public concern. *See Brady*, 515 S.W.3d at 884; *MediaOne, L.L.C.*, 592 S.W.3d at 940; *Hurd v. Reading*, No. 13-22-00146-CV, 2024 WL

851553, at *2 (Tex. App.—Corpus Christi-Edinburg Feb. 29, 2024, pet. filed) (mem. op.) (holding accusations of cybercrimes are matters of public concern and involve the right of free speech); *Austin v. Amundson*, No. 05-22-00066-CV, 2022 WL 16945911, at *3 (Tex. App.—Dallas Nov. 15, 2022, no pet.) (mem. op.) (stating criminal acts and reporting a crime are matters of public concern). Statements made to a public servant in connection with a law enforcement investigation are "made in connection with a matter of public concern–regarding a matter of interest to the community." *See QBE Americas, Inc.*, 2021 WL 1976459, at **3-5. Concerned parents' statements regarding misconduct or crime are statements regarding community well-being that relate to the health and safety of their children. *See Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.) (providing examples of statements related to community well-being, including concerned parents' statements about a children's baseball coach being angry and aggressive); *Caracio v. Doe*, No. 05-19-00150-CV, 2020 WL 38827, at **1-6 (Tex. App.—Dallas Jan. 3, 2020, no pet.) (mem. op.) (holding a parents' statements to a school concerning their children's statements about a prospective student's disciplinary history and inappropriate behavior were good-faith communications upon a subject which the author, one of her family members, and recipient had an interest sufficiently affected by the communication); *Bilbrey v. Williams*, No. 02-13-00332-CV, 2015 WL 1120921, at *8 (Tex. App.—Fort Worth Mar. 12, 2015, no

26

pet.) (mem. op.) (stating concerned parents' statements about children's coach involved communications relating to the mental and physical health of the involved children).

Based on this record, we conclude the Crums' communications to Popp and law enforcement that Charlie said he was going to shoot up the school and shoot Sophie were made in connection with a matter of public concern regarding a matter of interest to the community, namely the safety of children at school. *See Watson*, 497 S.W.3d at 607; *QBE Americas, Inc.*, 2021 WL 1976459, at *3-5; *Caracio*, 2020 WL 38827, at **1-6; *Bilbrey*, 2015 WL 1120921, at *8. Since the Crums' statements were made in connection with a matter of public concern they constitute an exercise of their right of free speech as defined in the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). We conclude the Crums met their burden to demonstrate the legal action brought by the Drakes for defamation, malicious prosecution, intentional infliction of emotional distress, and conspiracy claims "is based on or is in response to[]" the Crums' "exercise" of their "right of free speech[.]" *See id.* § 27.005(b)(1)(A). Thus, the TCPA applies to this legal action. *See id.* Having determined the TCPA applies, we need not consider the Crums' contention that the Drakes' legal action "is based on or is in response to[]" the Crums' "exercise" of their "right to petition[.]" *See id.* § 27.005(b)(1)(B); *see also* Tex. R. App. P. 47.1;

27

*Garcia v. Semler*, 663 S.W.3d 270, 280 (Tex. App.—Dallas 2022, no pet.). We sustain issue one.

In issue two, the Crums argue the trial court erred by failing to grant their Motion to Dismiss under the TCPA and summarily finding that the Drakes established a prima facie case for each essential element of their claims by clear and specific evidence. We must determine whether the Drakes established by clear and specific evidence a prima facie case for each essential element of their claims for defamation, malicious prosecution, intentional infliction of emotional distress, and conspiracy.

<u>Defamation</u>

Defamation is a false statement made about a plaintiff that is published to a third person without legal excuse and which damages the plaintiff's reputation. *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). The elements of a defamation cause of action include (1) the publication of a false statement of fact to a third party; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement; and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d at 593.

In their Original Petition, the Drakes alleged that the Crums' statements that Charlie threatened to shoot up the school and shoot Sophie were false, but after the Crums rebutted that allegation, the Drakes failed to provide the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *See id.* at 590. Instead, the evidence shows that Sophie testified that Charlie said he was going to shoot up the school on two occasions, and she explained that she did not report Charlie's statements because she did not think he was serious. Sophie also testified that she was shocked when Charlie told her he was going to shoot her one day, but still did not take him seriously. Popp testified that he, Detective Bridges, and Sergeant Terrell found Sophie to be credible, and after investigating the matter, the police confirmed Sophie's report was true. Popp explained that Sergeant Terrell told him that Charlie admitted making the statements. In their Original Petition, the Drakes state that "Charlie never once made any kind of credible threat, at best, he would jokingly respond to the Mean Girls" bullying him by saying "'yea right, I'm going to shoot up the school.'"

In a part of his Declaration affidavit submitted in support of the Drake's position, Charlie stated:

> During winter break in 2021, I approached my mom and asked her how to get people to leave me alone that continually ask me the same questions and tease me. She gave me the advice to respond in the affirmative to let them think they heard what they wanted to get out of you.

29

After that conversation with my mom, when the girls would encourage me to say I was a school shooter, that I was going to shoot up the John Cooper School, or to threaten them, I would usually respond with something like "yeah, sure whatever," or with quotes from a show I like to watch, the Amazing World of Gumball. I recall once being asked if I was going to kill one of the girls and I responded something along the lines of "sure, I am going to use a rubber band, a blueberry, and a pair of dice on you." Any time I responded to the girls without agreeing with them, they would continue to pester me about being a school shooter, so to avoid constant harassment, I would simply agree with them or go along with the story they were telling.

In his Declaration affidavit, Charlie admits to confirming the substance of the allegations that he is going to shoot up the school and/or kill one of the girls. The Drakes' defamation claim that Charlie never made the statements are inaccurate and their assertion that the Crums' statements are false is not supported by their own evidence.

After considering the pleadings, evidence under Rule 166a, and affidavits in the light most favorable to the Drakes, we hold the Drakes failed to establish by clear and specific evidence a prima facie case for defamation. The Drakes failed to provide the minimum quantum of evidence necessary to support a rational inference that the allegations contained in their petition (i.e. that the Crums' statements about Charlie are false) are true because Charlie admitted to making the statements that Sophie says he made. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *In re Lipsky*, 460 S.W.3d at 587, 590-91.

30

Intentional infliction of Emotional Distress

The Drakes' pleading alleges that Sophie intentionally inflicted emotional distress on Charlie by constantly bullying him and intentionally or recklessly making one or more false reports accusing him of threatening to shoot up the school. To recover damages for the intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998). The Texas Supreme Court has set a high standard to meet the element of extreme and outrageous conduct, holding that "the element is only satisfied if the conduct is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 714 (Tex. App.—Amarillo 2018, pet. denied) (quoting *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006)).

We have already concluded the Drakes failed to provide the necessary evidence to support their allegation that Sophie made false statements, and based on our review of the evidence, they also failed to support their allegation that Sophie constantly bullied Charlie. Rather, the evidence shows Sophie and her friends denied

31

the Drakes' bullying accusations, Charlie never reported being bullied to his parents or the school, and the school had no reports or complaints of Sophie bullying or harassing other students. As our Supreme Court has said with regard to intentional infliction claims: "We certainly understand judicial reticence to dismiss claims like this one stemming from heinous acts. But except in circumstances bordering on serious criminal acts, we repeat that such acts will rarely have merit as intentional infliction claims." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 818 (Tex. 2005). In this case, Sophie's conduct did not border on the commission of serious criminal acts. We conclude that because the Drakes failed to show that Sophie's conduct was extreme and outrageous, they have not established, by clear and specific evidence, a prima facie case on their claim for intentional infliction of emotional distress. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *Batra*, 562 S.W.3d at 714; *Moore*, 166 S.W.3d at 387.

Malicious Prosecution

To prove a civil claim for malicious criminal prosecution, a plaintiff must establish: (1) the commencement of a criminal prosecution against him; (2) initiation or procurement of the action by the defendant; (3) termination of the prosecution in his favor; (4) the plaintiff's innocence; (5) the absence of probable cause; (6) malice in filing the charge; and (7) damages. *Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 792 n.3. Initiation of an action is demonstrated by evidence that the defendant filed

formal charges against the plaintiff. *Browning-Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 293 (Tex. 1994). A person procures a criminal prosecution if their actions were enough to cause the prosecution and but for their actions the prosecution would not have occurred. *Id.* A person does not procure a criminal prosecution when the decision to prosecute is left to the discretion of a law enforcement officer or grand jury unless that person knowingly provided false information. *Id.* There must not only be proof that the person knowingly furnished false information, but also proof that the false information caused a criminal prosecution. *King v. Graham*, 126 S.W.3d 75, 76 (Tex. 2003).

The evidence shows Sophie did not initiate or procure a criminal action against Charlie. *See Lieck*, 881 S.W.2d at 293. In his affidavit, Brian stated that neither he, Julie, nor Sophie took any action to influence or encourage Charlie's arrest. Popp testified the Crum family did not ask him to notify law enforcement, but he reported Charlie's statements to law enforcement because he had a legal obligation to do so. Popp also testified that Sergeant Terrell told him that the county attorney would determine the next steps since Charlie admitted making the statements. The evidence shows that based on law enforcement's investigation, Investigator Charles requested a Directive to Apprehend Charlie, but law enforcement did not charge Charlie with any crime after he was released from

detention. In addition, based upon Charlie's admissions, the Drakes failed to produce evidence that Sophie knowingly furnished false information.

We hold the Drakes failed to provide the minimum quantum of evidence necessary to support a rational inference that their allegation that Sophie initiated or procured the commencement of a criminal prosecution against Charlie can be taken as true. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590. Accordingly, the trial court erred by concluding the Drakes established a prima facie case of malicious prosecution. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590.

Civil Conspiracy

The elements of civil conspiracy are: (1) a combination of two or more people; (2) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *Walker*, 516 S.W.3d at 81. Liability for a conspiracy comes from the act done to further the conspiracy, not the conspiracy itself. *Id.* The elements of a claim for civil conspiracy require the participation in an underlying intentional tort. *Id.* Intentional infliction of emotional distress and malicious prosecution are intentional torts. *Id.* In their Original Petition, the Drakes alleged that Sophie, Isabelle, and Abigail, or any

34

two of them, conspired to intentionally inflict emotional distress and maliciously prosecute Charlie.

We have already concluded that the Drakes failed to establish a prima facie case of either malicious prosecution or intentional infliction of emotional distress. Since the Drakes did not present prima facie proof to establish Sophie participated in an underlying intentional tort, we conclude the Drakes failed to present prima facie proof on their claim alleging civil conspiracy. *See id.*; *Castille v. Port Arthur Patrolmen's Hunting Club*, No. 09-18-00395-CV, 2020 WL 1879475, at *6 (Tex. App.—Beaumont Apr. 16, 2020, pet. denied), (mem. op.). Accordingly, the trial court erred by failing to dismiss the Drakes' claim for civil conspiracy. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c); *In re Lipsky*, 460 S.W.3d at 590. Having concluded the Drakes failed to present prima facie evidence for each essential element of their claims for defamation, intentional infliction of emotional distress, malicious prosecution, and civil conspiracy, we sustain issue two.

In issues three and four, the Crums argue the trial court erred by failing to grant their Motion to Dismiss under the TCPA after they proved the substantial truth and qualified privilege defenses. Since the Drakes failed to establish a prima facie case for each essential element of their claims, we need not address the Crums' complaints that they met their burden to establish each essential element of their

affirmative defense in issues three and four. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c), (d); Tex. R. App. P. 47.1.

In issue five, the Crums contend the trial court abused its discretion in awarding the Drakes attorney's fees by finding their Motion to Dismiss is frivolous. We review the trial court's award of attorney's fees under the TCPA for an abuse of discretion. *See Sullivan v. Abraham*, 488 S.W.3d 294, 299 (Tex. 2016). If the trial court "finds that a motion to dismiss filed under [the TCPA] is frivolous or solely intended to delay, the court may award court costs and reasonable attorney's fees to the responding party." Tex. Civ. Prac. & Rem. Code Ann. § 27.009(b). Having determined that the TCPA entitles the Crums to dismissal of the Drakes' claims, we conclude the trial court abused its discretion in finding the Crums' Motion to Dismiss frivolous. *See, e.g., Heavenly Homes of S. Tex., LLC v. Infinity Custom Constr., LLC*, No. 13-21-00298-CV, 2022 WL 2069232, at *8 (Tex. App.—Corpus Christi-Edinburg June 9, 2022, no pet.) (mem. op.) ("Given our determination herein that the motion to dismiss should have been granted in part, we further conclude that the motion to dismiss was not frivolous or solely intended to delay."). We sustain the Crums' fifth issue and reverse the Drakes' attorney's fees award.

## CONCLUSION

We conclude that because the Crums established the Drakes' claims are based on or in response to their exercise of their First Amendment right of free speech, and

because the Drakes failed to establish a prima facie case for each essential element of their claims, the trial court erred by denying the Crums' Motion to Dismiss under the TCPA. Accordingly, we reverse the trial court's Order denying the Crums' Motion and awarding the Drakes' attorney's fees and remand this cause to the trial court for entry of a judgment of dismissal as to the Drakes' claims against the Crums and for the trial court to make a determination of reasonable attorney's fees and costs to be awarded to the Crums. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a) (if the court orders dismissal the trial court shall award costs and reasonable attorney's fees to a moving party who prevails on its motions to dismiss).

REVERSED AND REMANDED.

JAY WRIGHT
Justice

Submitted on September 30, 2024
Opinion Delivered January 16, 2025

Before Golemon, C.J., Johnson and Wright, JJ.